**Jurgen Peter ALDINGER, Plaintiff,**

v.

**Kedra Adele SEGLER, et al, Defendants.**

**Civil No. 02–2624 (JAG).**

United States District Court, D. Puerto Rico.

April 29, 2003.

Modesto L. Rodriguez–Suarez, Hato Rey, PR, Stephen J. Cullen, Miles & Stockbridge PC, Towson, MD, for plaintiff.

Jose M. Ferrari, Aguadilla, PR, Juan A. Ramos–Diaz, San Juan, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court are respondent Kedra Adele Segler's ("Ms.Segler") objections to United States Magistrate Judge Gustavo A. Gelpí's Report and Recommendation (Docket No. 20) on the petition filed by petitioner Jürgen Peter Aldinger ("Mr.Aldinger") (Docket No. 1)on November 1, 2002, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, of October 25, 1980 ("Convention"), implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610 (2001), seeking the return of his three minor children to Germany, their country of habitual residence. Magistrate–Judge Gelpí recommended that the Court grant the petition. (Docket No. 20.) In her objections to the Magistrate–Judge's Report and Recommendation, Ms. Segler argues that: (1) the Magistrate–Judge made an erroneous factual determination that parties had reconciled, (2) the Magistrate–Judge erroneously interpreted the Sixth Clause (VI) of the Marriage Contract, and (3) the Magistrate–Judge erroneously concluded that Segler did not meet the "clear and convincing evidence" standard under the Article 13(b) and Article 20 exemptions provided by the Convention. For the reasons stated below, the Court adopts the Report and Recommendation.

### Standard of Review

A district court may, on its own motion, refer a pending matter to a United States Magistrate–Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendation to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R. 1998). The Court may accept, reject, or modify, in whole or in part, the Magistrate–Judge's recommendations. "Failure to raise objections to the report and recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992) (citations omitted).

### Factual Background

Mr. Aldinger, a German citizen, and Ms. Segler, a United States citizen, were married in Germany on December 5, 1997. (Docket No. 1, ¶ 4.) Mr. Aldinger and Ms. Segler are the biological parents of three

children: Maximilian, born on July 21, 1999; Alexandria, born on September 1, 2000; and Pascal, born on October 6, 2001 (collectively "the children"). (Docket No. 1, ¶ 4 and Tr. 14, ¶¶ 9–22.) All three children were born in Germany and are under the age of sixteen. (Tr. 14, ¶¶ 9–22.) In May of 2001, Mr. Aldinger and Ms. Segler experienced a period of separation that lasted until December of 2001, when they reconciled and began living together again at the same home[1] at Kranzhornweig 14, 85570 Markt Schwaben, Germany (Tr. 15, ¶¶ 4–18). The parties subscribed a Marriage Contract on April 5, 2002, to facilitate that reconciliation. From December 2001 until July 26, 2002, while living at the same address, both Ms. Segler and Mr. Aldinger were actively involved in the lives of the children (Tr. 15, ¶ 19 to 37, ¶ 12), and Mr. Aldinger participated in providing for his children's basic needs (Tr. 15, ¶ 19 to 37, ¶ 12, and 113, ¶ 25 to 114, ¶ 6). The second respondent, Kiera Hagan Segler, ("Ms. Kiera Segler") is Ms. Segler's sister, who at all times has resided in Puerto Rico.

On July 26, 2002, Ms. Segler, on her own initiative and without Mr. Aldinger's consent, removed the children from Germany by means of driving them to Italy. (Tr. 16, ¶ 6 to 18, ¶ 14.) Once in Italy, Ms. Segler left her automobile at the Venice airport parking lot and departed with the children for the United States. (Tr. 37, ¶¶ 6–8.) Their final destination was Puerto Rico. *Id.* Mr. Aldinger never agreed to the removal of the three children. (Tr. 18, ¶¶ 10–14.)

On November 1, 2002, Mr. Aldinger filed an Emergency Verified Petition for Warrant of Arrest in lieu of Writ of Habeas

Corpus and Emergency Verified Petition For Return of Children to Aldinger. (Docket No. 1.) Mr. Aldinger is seeking the return of his three minor children, Maximilian Joseph Kayin Aldinger ("Maximilian"), Alexandra Johanna Noni Aldinger ("Alexandria") and Pascal Xaver Obbina Aldinger ("Pascal") to Germany, their habitual country of residence. Mr. Aldinger alleges that Ms. Segler wrongfully removed the children in breach of the rights of custody that Mr. Aldinger exercised on them while Ms. Segler and the children resided in Germany. Pursuant to the terms of the Convention, Mr. Aldinger requests that the Court order the return of the children to Germany.

*Discussion*

Ms. Segler has objected to the Magistrate–Judge's Report and Recommendation granting Mr. Aldinger's petition, based on erroneous findings of fact and an erroneous application of standards of evidence by the Magistrate–Judge. After a careful review of the record, the Court ADOPTS the Magistrate–Judge's Report and Recommendation that the petition be granted and that the complaint be dismissed as to Ms. Kiera Hagan Segler.

I. Mr. Aldinger's Burden

In order to compel the return of the three children pursuant to the Convention, Mr. Aldinger must demonstrate by a preponderance of the evidence that they were wrongfully removed from Germany. Mr. Aldinger specifically must show that (a) the children were removed from their habitual place of residence in violation of Mr. Aldinger's rights of custody, and (b) that Mr. Aldinger was exercising his rights of custody at the time of removal. The

---

1. Ms. Segler testified that she, Mr. Aldinger and the children lived in the same three story house but in different apartments, with Ms. Segler and the children on the second floor and Mr. Aldinger on the third floor. Though Mr. Aldinger and Ms. Segler did not sleep in the same rooms, they shared an address, the kitchen area, and the entrance to the house.

parties have stipulated that, prior to their removal, the children's habitual place of residence was Germany (Tr. 14, ¶¶ 9–22). Ms. Segler alleges that in the Marriage Contract signed by the parties Mr. Aldinger forfeited his custody rights, and therefore does not meet the Convention's requirements.

■ The pertinent provisions of Section VI of the Marriage Contract, VI.2 and VI.1 respectively, read as follows:

> "The persons appeared [sic] before agree that the three legitimate children of the parties shall live with the person named first [Ms. Segler] in case of a separation of the parties after a separation but not after a divorce. After a divorce the courts shall determine the place of residence."

> "The persons before me [Mr. Aldinger and Ms. Segler] have joint custody of their three legitimate children Maximilian, Alexandria and Pascal. This responsibility and authority shall also be shared in the future but not after a divorce. After a divorce the court shall determine custody."

(See Pet. Exh. 1). Ms. Segler alleges that the Report and Recommendation bases its finding of wrongful removal on a reconciliation of the parties, and that Section VI of the Marriage Contract, with Mr. Aldinger's consent, gives her the right to determine the children's place of residence during a separation. The Court disagrees with Ms. Segler's broad reading of said provisions, and finds that the Sixth Clause of the Marriage Contract did not amount to a forfeiture of custodial rights. Whether or not Ms. Segler and Mr. Aldinger were separated at the time of removal does not alter the rationale underlying the Report and Recommendation, which rests on a narrower reading of the Marriage Contract: "Nowhere in the marriage contract do the parties agree that in the event of separation, Mr. Aldinger has forfeited his rights of custody and/or that Ms. Segler retains the unilateral right to determine the children's place of residence in or outside of Germany." (Docket No. 20 at 7.)

■ In her objections, Ms. Segler argues that the Report and Recommendation erroneously focuses on the custody issue and not on the terms of the abduction, as required by the Convention. Article 3 of the Convention states:

> "The removal or the retention of a child is to be considered wrongful where-

> a.  it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

> b.  at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

> The rights of custody mentioned in subparagraph a above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."

Therefore, the issue of custody *at the time of removal* is essential in determining whether there was a wrongful removal of the children. Ms. Segler argues that Mr. Aldinger forfeited his custody rights and cannot be protected under Article 3; however, Section VI.1 of the Marriage Contract specifically states that Ms. Segler and Mr. Aldinger have joint custody of the three children.

> *"The persons before me [Mr. Aldinger and Ms. Segler] have joint custody of their three legitimate children Maximilian, Alexandria and Pascal. This re-*

sponsibility and authority shall also be shared in the future but not after a divorce. After a divorce the court shall determine custody."

The Marriage Contract that both parties subscribed to indicates that Mr. Aldinger and Ms. Segler had joint custody of the children. As to whether or not Mr. Aldinger exercised those rights, in *Friedrich v. Friedrich,* 78 F.3d 1060, 1065 (6th Cir. 1996) the court found that "The only acceptable solution, in the absence of a ruling from a court in the country of habitual residence, is to liberally find "exercise" whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." The fact that Mr. Aldinger lived at the same address (Tr. 15, ¶¶ 4–18) and actively participated in the lives of the children constitutes an exercise of his custody rights (Tr. 15, ¶ 19 to 37, ¶ 12, and 113, ¶ 25 to 114, ¶ 6).

Ms. Segler further requests that the Court conclude, based on *Journe v. Journe,* 911 F.Supp. 43 (D.Puerto Rico 1995), that petitioner's custody rights were not violated and that there was no wrongful removal. In *Journe v. Journe,* the Court concluded that petitioner's voluntary dismissal of the divorce and custody proceedings in France that were the basis for his original petition acted as a waiver of his rights under the Convention. In this case, there has not been a formal divorce or custody proceeding, and the Marriage Contract clearly articulates that final custody and residence arrangements, after a divorce, will be decided by the courts.

This Court agrees with the Magistrate Judge that Mr. Aldinger has met the requirements established by the Convention for the return of the three children.

## II.  Ms. Segler's Burden

Ms. Segler has objected to the Magistrate–Judge's application of the clear and convincing evidence standard in determining whether there is an exception to the children's return pursuant to Article 13(b) and Article 20 of the Convention. After a careful review of the record in this case, this Court finds that the Magistrate–Judge correctly applied the clear and convincing evidence standard when deciding that the evidence failed to demonstrate a "grave risk" or "protection of human rights and fundamental freedoms" factor.

■ Ms. Segler relies on *Walsh v. Walsh,* 221 F.3d 204 (1st Cir.2000) to uphold her claim to an exemption under Article 13(b) of the Convention. That case presented a fact pattern in which petitioner's violent behavior and disregard for court orders ". . . went well beyond what one encounters even in bitter divorce and custody contexts." *Id.* at 222. While there has been violent behavior between the parties in this case, there are no allegations of direct physical or psychological abuse against the children. The court in *Whallon v. Lynn,* 230 F.3d 450 (1st Cir. 2000), where there were allegations of abuse between the parties, found that those instances did not constitute a risk of "grave harm," as they were not directed at the child nor did they have the intensity of those of petitioner father in *Walsh.* The record in this case also fails to establish a "grave risk" defense to the children's return under Article 13(b). Furthermore, such a finding in this case would serve to undermine the purpose of the Convention itself.

"However, Article 13b defenses are becoming quite commonplace, even though in most cases they are rejected. Attempts to frustrate return under the guise of best interests, if allowed to succeed, could undermine the Convention and transform its procedural framework into one of substance. Indeed, the Con-

vention presumptively declares that the best interests of the child are in fact served by preventing abductions and ordering the return of the child."

Linda Silberman, *Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis*, 28 Fam. L.Q. 9, 33 (1994).

As to her defense under Article 20, Ms. Segler cites *de los Rios Carmona v. Melendez Roca*, 1996 WL 940333, 141 D.P.R. 282 (1996), to establish the recognition of said defense in this jurisdiction. Although Article 20 may have been recognized as a defense to the return of the children by the Supreme Court of Puerto Rico, its application is limited solely to the facts of that case. Furthermore, we do not consider that decision to be a binding precedent on this Court.

The limited scope of the Article 20 exemption has been defined as follows:

"Article 20 ... is directed to concerns about harms arising from the child's return to a particular country. Article 20 envisioned a limited situation where human rights concerns, most likely defined within the parameters of other international agreements, would prohibit return."

Linda Silberman, *Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis*, 28 Fam. L.Q. 9, 28–9 (1994). In this case, there is no evidence that the children's or Ms. Segler's "human rights and fundamental freedoms" would be at risk if they were to return to Germany. This determination is in agreement with the established interpretation that Article 20 was to be "restrictively interpreted and applied ... on the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process." *Hazbun Escaf v. Rodriquez*, 200 F.Supp.2d 603, (E.D.Va.2002); Department of State,

*Hague International Child Abduction; Text and Legal Analysis*, Pub. Notice 957, 51 Fed.Reg. 10, 494, 10,510 (1986).

■ However, this Court is authorized to take measures to ensure the general well-being of the child, and may order the child to be returned without changing the present physical custody arrangements. Linda Silberman, *Hague Convention on International Child Abduction: A Brief Overview and Case Law Analysis*, 28 Fam. L.Q. 9, 29 (1994). This Court finds that Ms. Segler should be allowed to accompany her children on their return to Germany, and that Mr. Aldinger must make a suitable living accommodation so that the present physical custody arrangement is maintained.

III. Request for additional findings of fact.

Ms. Segler and Mr. Aldinger have requested further determination of additional findings of fact. The requested factual conclusions are neither relevant nor necessary in reaching the present decision. This Court's ruling is limited to the procedural and jurisdictional issues addressed by the Convention, and a determination of the ultimate merits of any custody dispute between the parties is beyond that narrow procedural and jurisdictional landscape. It would be the responsibility of the German courts, not this Court, to render a final custody judgment in this case.

### Conclusion

For the foregoing reasons, the Court ADOPTS Magistrate–Judge Gustavo A. Gelpí's Report and Recommendation. (Docket No. 20.) The petition is GRANTED and the children must be returned to Germany in compliance with the Hague Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act

("ICARA"), 42 U.S.C. § 11601–11610 (2001). This Court also finds that Ms. Segler should be allowed to accompany her children on their return to Germany, and that Mr. Aldinger must make suitable living accommodations so that the present physical custody arrangement is maintained until the German courts can make a final custody determination. The Court also DISMISSES the complaint as to respondent Kiera Hagan Segler.[2]

IT IS SO ORDERED.

---

**2.** The Court will not dismiss the claims against Ms. Kiera Hagan Segler with prejudice until there has been full compliance with this order. At such time, the parties may renew their request for a dismissal with prejudice.