United States Court of Appeals,

Fifth Circuit.

No. 93-7678.

James COOPER, et al., Plaintiffs-Appellees,

v.

W.B. "Billy" NOBLE, Sheriff of Madison County, et al.,
Defendants,

Jessie Hopkins, Sheriff of Madison County, Robert J. Dowdle,
Marcus Sharpe, David H. Richardson, Karl M. Banks & J.L.
McCullough, Members of the Madison County Board of Supervisors,
Defendants-Appellants.

Oct. 5, 1994.

Appeal from the United States District Court for the Southern
District of Mississippi.

Before WIENER, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant Madison County officials[1] appeal the United States

Magistrate Judge's denial of their motion for relief from a consent

judgment governing jail conditions in Madison County, Mississippi,

and his finding of contempt for violations of that judgment.

Finding no reversible error in the magistrate judge's rulings, we

affirm.

I

This litigation commenced in 1978, when a group of Madison

County Jail inmates filed a class action against Madison County

officials challenging conditions at the jail. The parties

---

[1]The county officials bringing this appeal are the Madison
County Sheriff and the members of the Madison County Board of
Supervisors.

negotiated an interim consent agreement, which was accepted by the district court and entered as an interim judgment. The interim judgment incorporated a wide variety of remedial measures, and its directives covered matters ranging from racial discrimination to the type of combs issued to inmates.[2] A year later, the parties agreed to allow the district court to refer their dispute to a United States Magistrate Judge for all future proceedings and entry of judgment. The parties then negotiated a second, substantively similar, interim consent judgment. The magistrate judge entered the final judgment, which also resembled previous agreements, soon thereafter.

Although the magistrate judge has closely supervised the jail's efforts to comply with the consent judgments, the inmates petitioned the magistrate judge to hold the county officials in contempt for violations of the first interim judgment and filed similar motions three times after the final judgment.[3] While each

---

[2]The interim judgment was divided into the following 24 categories: nutrition, hygiene supplies, clothing, bedding, writing materials and postage, medical attention, matrons, fire safety, mail rules and regulations, custodial personnel, access to attorneys and legal materials, reading materials, televisions and radios, smoking, telephone calls, visitation, exercise and recreation, use of force and corporal punishment, classification of inmates, access to stores, daily cleanup, selection and training of jail personnel, disciplinary procedures, and notice of rules.

[3]In their first four motions to have the county officials charged with contempt, petitioners alleged, *inter alia,* that inmates at the Madison County Jail had been beaten by guards, denied adequate medical treatment, denied access to the exercise yard, punished without notice or cause, denied toiletries and hygiene materials, and denied clean linens and bath clothes. They further alleged that the jail was understaffed and overcrowded, that there was no matron or doctor on call at the

of the first three motions was dismissed after the county officials agreed to new terms for compliance monitoring, the fourth was not dismissed until the inmates reported that the county officials were in substantial compliance with the final judgment.

A year later, and a decade after the magistrate judge issued the final judgment, the county officials filed a motion for relief prompted in large part by the county's construction of a new jail, the Madison County Detention Center ("MCDC"). They filed the motion under subparts (5) and (6) of Rule 60(b) of the Federal Rules of Civil Procedure, asserting that changes in the operative facts and applicable law warranted relief from the final judgment. *See* Fed.R.Civ.P. 60(b)(5), (6). The county officials argued that jail conditions and procedures had been radically altered by the construction of the new facility, and were either in conformity with or improvements upon the stipulations contained in the final judgment. In their amended response to the Rule 60(b) motion, the inmates once again asked the magistrate judge to hold the county officials in contempt for violations of the final judgment.[4]

jail, and that inmates were allowed insufficient time to exercise and use the telephone.

[4]The inmates alleged that the MCDC violated the final judgment by, *inter alia,* allowing overcrowding, providing inadequate medical care (e.g., denying treatment, providing inadequate treatment, and not having a nurse or doctor present during sick calls), ignoring health guidelines for food service (e.g., allowing food to be handled and served in unsafe ways, not submitting menu proposals to a government dietitian, and not serving juveniles whole milk), compromising inmates' health and hygiene in other ways (e.g., not providing the required hygiene supplies, not cleaning linens or facilities frequently enough, and not providing sufficient opportunities for exercise), neglecting minority groups (e.g., not providing special meals for

3

The magistrate judge conducted an evidentiary hearing on the motion for relief. He held that the county officials had failed to show that relief from any part of the final judgment was warranted, with the exception of those provisions concerning contact visitation for pretrial detainees. The magistrate judge found that the county officials had "ceased making any attempt to abide by the conditions set out in the Final Judgment when they moved into the new Madison County Detention Center" and were in violation of several provisions of the final judgment.[5] He denied the motion for relief and held the officials in contempt of court for violating the final judgment. The Madison County officials appeal the magistrate judge's decision, arguing that he should have granted their Rule 60(b) motion for relief and not held them in contempt of court.

those whose religious beliefs prohibited their eating the regular meal, not keeping a matron on call for female inmates, and not separating juveniles and adults), limiting legal protections and inmates' access to legal services (e.g., not following proper procedure in disciplinary matters, not informing inmates of their rights regarding access to legal materials, not allowing inmates to meet with legal services personnel, and impeding inmates' efforts to telephone their attorneys) and restricting privileges (e.g., not allowing inmates to provide their own tennis shoes, limiting reading material, not supplying inmates with televisions and radios, hampering access to telephones, and limiting visitation).

[5]The magistrate found that the county officials had violated the provisions of the final judgment requiring them to provide special meals for prisoners who do not eat pork for religious reasons, serve juveniles whole milk once a day, make a matron available to the female inmates, inform inmates of a fire safety plan and conduct fire drills, give inmates access to jail-supplied televisions and radios, allow inmates adequate time for exercise and visitation, and provide two guards for every fifty inmates. The magistrate also noted that "there were numerous other violations of the Final Judgment...."

We review the magistrate judge's ruling on the Rule 60(b) motion, and his finding of contempt, for abuse of discretion.[6] In doing so, we are mindful that our deference to the magistrate judge's exercise of his discretion is heightened in cases such as the one before us, which involve consent decrees directed at institutional reform. *See Rufo v. Inmates of Suffolk County Jail,* 502 U.S. ----, ----, 112 S.Ct. 748, 765, 116 L.Ed.2d 867 (1992) (O'Connor, J., concurring) (noting heightened deference owed to district court findings in case involving implementation of a jail reform consent decree). We owe substantial deference to the magistrate judge's many years of experience with this matter. *See Hutto v. Finney,* 437 U.S. 678, 688, 98 S.Ct. 2565, 2572, 57 L.Ed.2d 522 (1978) (holding that Court owed substantial deference to trial judge in case involving prison reform).

A

Rule 60(b) of the Federal Rules of Civil Procedure, upon which the county officials based their request for relief from the final judgment, provides in relevant part that:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

---

[6] Both of the magistrate's rulings had the effect of continuing the final judgment, and are therefore reviewable under 28 U.S.C. § 1292(a)(1).

The magistrate judge's denial of the county officials' motion for relief from the final judgment is reviewable only for an abuse of discretion. *See Williams v. Brown & Root, Inc.,* 828 F.2d 325 (5th Cir.1987) ("We review a denial of Rule 60(b) relief under an abuse of discretion standard.") (citation and footnote omitted).

In *Rufo v. Inmates of Suffolk County Jail,* the Supreme Court set forth the standard to be applied in ruling on a Rule 60(b) motion in institutional reform litigation cases such as this one. 502 U.S. at ----, 112 S.Ct. at 760. The Court interpreted Rule 60(b), which provides for relief from a court order when "it is no longer equitable that the judgment should have prospective application," as requiring the party seeking relief to "bear[ ] the burden of establishing that a significant change in circumstance warrants revision of the decree." *Id.* A party may meet this burden in one of two ways: "by showing either a significant change in factual conditions or in law." *Id.*

1

The county officials contend that "dramatic" and "unforeseen" changes have occurred in the Madison County prison system since the final judgment was entered. They assert that: (1) the MCDC houses many more prisoners than the old jail, (2) the MCDC receives prisoners from many different governmental agencies, (3) the inmates at the MCDC have more diverse criminal records, (4) most of the inmates at the MCDC are pretrial detainees, (5) only juveniles adjudicated as adults reside at the MCDC, (6) the MCDC no longer houses mental patients, and (7) the MCDC is subject to inspections

6

by the governmental agencies from which it receives inmates.

When significant changes in factual conditions make a consent judgment unworkable, make compliance substantially more onerous, or make enforcement detrimental to the public interest, a court has the discretion to modify the judgment. *Rufo,* 502 U.S. at ----, 112 S.Ct. at 760. However, the Supreme Court never suggested that changed factual circumstances in and of themselves were sufficient grounds for relief from a judgment. In fact, the Court insisted that the petitioning party must "ma[k]e a reasonable effort to comply with the decree." *Id.* at ----, 112 S.Ct. at 761. Thus, even if we take as true all the alleged changes in factual conditions, the county officials are far from meeting their burden under *Rufo.* The county officials must also: (1) show that those changes affect compliance with, or the workability or enforcement of, the final judgment, and (2) show that those changes occurred despite the county officials' reasonable efforts to comply with the judgment. The county officials have not met either requirement. *See id.* at ----, 112 S.Ct. at 760-61. They do not adequately explain how increased inspections and changes in the number and diversity of inmates affect the workability of the final judgment, compliance with the judgment, or enforcement of the judgment. Neither do they show that those changes, many or all of which were changes *made by the county officials,*[7] occurred despite their

[7]The county officials offered into evidence a government memorandum stating: "We are now enjoying the use of this new 4.7 million dollar facility [the MCDC], made possible through the hard work of the Sheriff and Board of Supervisors...." (Record on Appeal, Defs.' Ex. 7). Also, testimony revealed that the MCDC

7

reasonable efforts to comply with the judgment.

To find that the magistrate judge abused his discretion in denying the Rule 60(b) motion, "[i]t is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so *unwarranted* as to constitute an abuse of discretion." *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981) (emphasis in original). The magistrate judge, after a full evidentiary hearing, found that the county officials "made no showing that changed factual conditions make compliance with the decree substantially more onerous; that the Final Judgment is unworkable because of unforeseen obstacles; that enforcement of the decree without modification would be detrimental to the public interest...." We hold that based on the evidence before him, the magistrate judge did not abuse his discretion in finding that the county officials failed to demonstrate that changes in factual conditions compelled him to grant the Rule 60(b) motion for relief.

2

The county officials also contend that changes in the law governing prison conditions litigation compelled the magistrate judge to grant their Rule 60(b) motion for relief. Specifically, the county officials argue that the Supreme Court's decision in *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), changed the law applicable to prison reform cases by "add[ing] a subjective component to a plaintiff's burden of proof

voluntarily accepts federal inmates.

8

in a prison conditions case." (Record on Appeal, Appellants' Br. at 27). The Supreme Court has held that "modification of a consent decree may [also] be warranted when the statutory or decisional law has changed to make legal what the decree was designed to prevent." *Rufo,* 502 U.S. at ----, 112 S.Ct. at 762. However, while federal courts "may not order States or local governments, over their objection, to undertake a course of conduct not tailored to curing a constitutional violation that has been adjudicated," the Court recognized that parties to a consent judgment "could settle the dispute over the proper remedy for the constitutional violations that had been found by undertaking to do more than the Constitution itself requires ... but also more than what a court would have ordered absent the settlement." *Id.* at ---- - ----, 112 S.Ct. at 762-63.

The Supreme Court's ruling in *Wilson* is not a change in law that would satisfy the *Rufo* requirements because it is not applicable to the enforcement of a consent decree. As the Supreme Court stated in *Rufo,* a court may enforce agreements in consent judgments that are not constitutionally mandated. *Rufo,* 502 U.S. at ---- - ----, 112 S.Ct. at 762-63.[8] The very nature of a consent

---

[8]This is not to say that a court may not, in its discretion, choose to modify a consent agreement to reflect the relaxation of constitutional mandates. The magistrate recognized this when he modified a section of the consent judgment requiring contact visitation for pretrial detainees, in deference to a Supreme Court ruling that denying pretrial detainees such visitation for security reasons is not unconstitutional. *See Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). The *Rufo* Court held only that modification is not compelled in such cases. *See Rufo,* 502 U.S. at ---- - ----, 112 S.Ct. at 762-63.

9

agreement is such that parties will agree to act in ways they do not believe the Constitution requires in order to "save themselves the time, expense, and inevitable risk of litigation." *Id.,* 502 U.S. at ----, 112 S.Ct. at 762 (quoting *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971)).[9] We find that the magistrate judge did not abuse his discretion in finding that changes in the law applicable to prison conditions did not compel him to grant the county officials' Rule 60(b) motion for relief.

B

Finally, the county officials contend that the magistrate judge erred in holding them in contempt of court for failure to comply with the final judgment. The county officials do not argue that they are in total compliance, but that they are in substantial compliance, and that the only provisions of the final judgment they have violated are those that the magistrate judge should have modified under *Rufo.* We review the magistrate judge's finding of contempt for abuse of discretion. *Martin v. Trinity Industries,* 959 F.2d 45, 46 (5th Cir.1992) (citing *United States v. Sorrells,* 877 F.2d 346, 348 (5th Cir.1989)). We review the magistrate judge's assessment of the evidence supporting that finding for clear error. *Martin,* 959 F.2d at 45-46 (citing *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392, 401 (5th Cir.1987)). The county officials argue only substantial compliance, admitting

---

[9]This analysis is equally applicable to the other changes in constitutional law mentioned in the county officials' brief.

to noncompliance in some areas.  For example, the county officials acknowledge that they do not provide radios and televisions for the inmates as required by the final judgment, and do not allow as much visitation and outdoor exercise as required by the final judgment. We have already considered and rejected the county officials' argument that *Rufo* compels modification of those provisions.  Thus, we conclude that the magistrate judge's finding of contempt was neither clearly erroneous nor an abuse of his discretion.

### III

For the foregoing reasons, we AFFIRM both the magistrate judge's denial of the Rule 60(b) motion for relief from the final judgment and his finding of contempt.