United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 20, 2006**

Charles R. Fulbruge III
Clerk

REVISED AUGUST 9, 2006
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-41798

_____

JENEVA FRAZAR, ET AL.,

Plaintiffs,

LINDA FREW, as next friend of her minor child, Carla Frew;
CHARLOTTE GARVIN, as next friend of her minor children,
Johnny Martinez, Brooklyn Garvin and BreAnna Garvin;
SHANNON GARCIA, as next friend of her minor children,
Andrew Garcia, Marisha Garcia, Stephen Sanchez and Allison
Sanchez; MARIA AYALA, as next friend of her minor children,
Christopher Arizola, Leonard Jimenez and Joseph Veliz; MARY
FISHER, as next friend of her minor child, Tyrone T. Edwards; MARY
JANE GARZA, as next friend of her minor children, Hilary Garza
and Sarah Renea Garza,

Plaintiffs-Appellees,

versus

RICHARD LADD, ET AL.,

Defendants,

DAVID BALLARD, Texas State Medicaid Director; ALBERT
HAWKINS, State Commissioner of Health and Human Services;

1

DR. EDUARDO SANCHEZ, Commissioner of Health; BRIDGETT COOK, employee of Texas Department of Health in official capacity,

Defendants-Appellants.

_____

Appeal from the United States District Court for
the Eastern District of Texas
_____

Before REAVLEY, SMITH and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:

This is the latest chapter in the suit to improve Texas administration of the Medicaid program to afford health care to the certified class of indigent children.[1] The state officials filed this motion to terminate or modify the consent decree entered in 1996. The district court denied the motion and we affirm.

I.

Following remand from this court, defendants moved pursuant to Federal Rule of Civil Procedure 60(b)(5) to terminate the entire consent decree or, in the

_____

[1] The history of reported decisions begins with the district court's first decision, *Frew v. Gilbert*, 109 F. Supp. 2d 579 (E.D. Tex. 2000) (*Frew I*), and moves to our first panel decision, *Frazar v. Gilbert*, 300 F.3d 530 (5th Cir. 2000) (*Frazar I*), the Supreme Court's decision, *Frew v. Hawkins*, 540 U.S. 431, 124 S. Ct. 899, 157 L.Ed.2d 855 (2004) (*Frew II*), and our decision on remand from the Supreme Court, *Frazar v. Hawkins*, 376 F.3d 444 (5th Cir. 2004) (*Frazar II*).

alternative, to dissolve the consent decree as to all urban areas of Texas.[2]

Defendants argued that they were in compliance with federal Medicaid law, therefore rendering the consent decree unnecessary, and its enforcement inequitable. Defendants argued that the ends of the consent decree had been met (i.e., compliance with the federal law), and it was no longer equitable that the judgment should have prospective application. In the alternative, defendants argued that they established compliance with federal law in all urban areas of Texas and, thus, the objects of the consent decree had been attained, and it should have no prospective application, with respect to urban areas.

Plaintiffs argued that defendants were not entitled to Rule 60(b)(5) relief because: (1) compliance with federal law alone was insufficient to warrant dissolution of the consent decree; (2) defendants were not in compliance with federal law; (3) defendants had never attempted to comply, in good faith, with certain provisions of the consent decree; and (4) the objects of the consent decree had not been attained.

Following an eight-day evidentiary hearing on the Rule 60(b)(5) motion, and

---

[2] *Frew v. Hawkins,* 401 F. Supp. 2d 619, 623 (E.D. Tex. 2005) (*Frew III*). Defendants define "urban areas" as the counties served by the Medicaid managed care organizations that have entered into the Standardized Contract for Services with the Texas Health and Human Services Commission. *Id.* at 631 n.19.

3

consideration of post-hearing briefs, the district court issued a decision denying defendants' Rule 60(b)(5) motion in its entirety. The district court applied the legal standard articulated by the Supreme Court in *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 112 S. Ct. 748, 116 L.Ed.2d 867 (1992) and by this court in *Cooper v. Noble*, 33 F.3d 540 (5th Cir. 1994). The dispositive holding of the district court was to reject defendants' overriding contention that the recent opinion of the Supreme Court in *Frew II* requires termination of judicial oversight when the state complies with federal law, whatever the terms of the consent decree may be.

## II.

We have jurisdiction[3] and review the denial of a Rule 60(b) motion for an abuse of discretion.[4] A district court's ruling on a Rule 60(b) motion is entitled to deference.[5] We review de novo, however, any questions of law underlying the district court's decision.[6]

---

[3] *Rufo*, 502 U.S. at 391, 112 S. Ct. at 764 ("a consent decree is a final judgment").

[4] *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 997 (5th Cir. 2001).

[5] *Cooper*, 33 F.3d at 543.

[6] *Ran-Nan, Inc. v. Gen. Accident Ins. Co. of Am.*, 252 F.3d 738, 739 (5th Cir. 2001).

A.

Defendants contend that the district court applied the incorrect legal standard for consent decree modification in institutional reform cases and argue that the district court failed to follow the Supreme Court's admonishments in *Frew II* regarding federalism, separation of powers, democratic accountability, and deference to those state officials responsible for administering public institutions and programs. The contention is that instead of following *Frew II*, the district court placed too much importance on the *Rufo* test for consent decree modification.

In *Rufo*, the Court noted that the standard for modification of consent decrees, now set forth in Federal Rule of Civil Procedure 60(b),[7] is a "flexible" one[8] and a party seeking modification of a consent decree "bears the burden of establishing that a significant change in circumstances warrants revision of the decree."[9] That

---

[7] Rule 60(b) provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application. . . .

[8] *Rufo*, 502 U.S. at 393, 112 S. Ct. at 765.

[9] *Id.* at 383, 112 S. Ct. at 760.

5

burden may be met "by showing either a significant change either in factual conditions or in law."[10]   Once a moving party meets this standard, a district court must consider "whether the proposed modification is suitably tailored to the changed circumstance."[11]

We have had one occasion to apply the standard set forth in *Rufo*.  In *Cooper*, we upheld a magistrate judge's denial of the defendants' Rule 60(b) motion in a pre-Prison Litigation Reform Act case applying the *Rufo* Rule 60(b) standard.[12]  We explained:

> When significant changes in factual conditions make a consent judgment unworkable, make compliance substantially more onerous, or make enforcement detrimental to the public interest, a court has the discretion to modify the judgment.  However, the Supreme Court [in *Rufo*] never suggested that changed factual circumstances in and of themselves were sufficient grounds for relief from a judgment.  In fact, the Court insisted that the petitioning party must "ma[k]e a reasonable effort to comply with the decree."  Thus, even if we take as true all the alleged changes in factual conditions, the county officials are far from meeting their burden under *Rufo*.  The county officials must also:  (1) show that those changes affect compliance with, or the workability or enforcement of, the final judgment, and (2) show that those changes occurred despite the county officials' reasonable efforts to comply with the judgment.[13]

---

[10] *Id.* at 384, 112 S. Ct. at 760.

[11] *Id.* at 383, 112 S. Ct. at 760.

[12] 33 F.3d at 545.

[13] *Id.* at 544 (internal citations omitted).

The most recent pronouncement from the Supreme Court on the modification

of decrees occurred in this case. In *Frew II*, while in addition to holding that the

Eleventh Amendment does not act as a bar to an enforcement action to a consent

decree the initial entry of which was consistent with *Ex parte Young*, 209 U.S. 123,

28 S. Ct. 441 (1908), the Court dedicated Section III of its opinion to state officials

warning that enforcement of consent decrees can undermine the sovereign interest

and accountability of state governments.[14]

The Court acknowledged that:

[i]f not limited to reasonable and necessary implementations of federal
law, remedies outlined in consent decrees involving state officeholders
may improperly deprive future officials of their designated legislative and
executive powers. They may also lead to federal court oversight of state
programs for long periods of time even absent an ongoing violation of
federal law.[15]

In such circumstances, the Court stated, the States are not without remedy:

When a suit under *Ex parte Young* requires a detailed order to
ensure compliance with a decree for prospective relief, and the decree in
effect mandates the State, through its named officials, to administer a
significant federal program, principles of federalism require that state
officials with front-line responsibility for administering the program be
given latitude and substantial discretion.
    The federal court must exercise its equitable powers to ensure that

---

[14] *Frew II*, 540 U.S. at 441-42, 124 S. Ct. at 905-06.

[15] *Id.* at 441, 124 S. Ct. at 905.

7

when the objects of the decree have been attained, responsibility for discharging the State's obligations is returned promptly to the State and its officials. As public servants, the officials of the State must be presumed to have a high degree of competence in deciding how best to discharge their governmental responsibilities. A State, in the ordinary course, depends upon successor officials, both appointed and elected, to bring new insights and solutions to problems of allocating revenues and resources. The basic obligations of federal law may remain the same, but the precise manner of their discharge may not. If the State establishes reason to modify the decree, the court should make the necessary changes; where it has not done so, however, the decree should be enforced according to its terms.[16]

The Court cited two cases as examples of the application of Rule 60(b) to consent decrees in the context of institutional reform litigation: *Rufo*, 502 U.S. 367, 112 S. Ct. 748 and *Philadelphia Welfare Rights Organization. v. Shapp*, 602 F.2d 1114 (3d Cir 1979).[17]

---

[16] *Id.* at 442, 124 S. Ct. at 906.

[17] *Id.* at 441, 124 S. Ct. at 906. In *Shapp*, a pre-*Rufo* case, the district court granted the defendants' motion to modify an institutional reform consent decree in light of changed circumstances that were beyond the defendants' control and were not contemplated by the court or the parties when the decree was entered. 602 F.2d at 1119–21. The consent decree at issue in *Shapp* was entered as a result of litigation over Pennsylvania's EPSDT program, and the defendants were seeking to modify or vacate the decree based on (1) the exemplary performance of Pennsylvania's program, and (2) inability to comply, after a good faith effort, with certain terms of the decree. The district court modified the decree in three respects after finding that the defendants had made a good faith effort at compliance, but circumstances beyond the defendants' control and not contemplated by the court or parties "put achievement of the [provisions' requirements] beyond reach." *Id.* at 1120-21.

8

Defendants contend that in light of the principles expressed in *Frew II*, the Supreme Court altered the standard that courts employ to modify a consent decree arising from institutional reform litigation, and that *Frew II* marks a shift away from *Rufo*'s changed-circumstances approach. They contend that *Frew II* adopted a more flexible approach, one which places considerable weight upon democratic accountability and federalism concerns. According to defendants, this alleged new standard annunciated by the Court in *Frew II* requires the district court to promptly return the State's program to state officials when the objects of the decree have been attained, and to do so here because the object of the consent decree is compliance with the Medicaid Early Screening, Diagnosis and Training Program (EPSDT) and they are in compliance with the EPSDT. In essence, defendants argue that *Frew II* requires the district court to promptly return the State's program to state officials if there are no ongoing violations of federal law.

We reject defendants' argument that *Frew II* ushers in a new standard for consent decree modification. While the Court in *Frew II* did underscore the federalism mandates in institutional reform litigation, it did not alter the standard for modification of consent decrees. Instead, it directed lower courts to *Rufo* and *Shapp* as examples of the proper application of Rule 60(b)(5) to modification of institutional reform consent decrees, neither of which discusses mere compliance

9

with federal law as a reason for modifying the decree. Further, *Frew II* did not

mention federal law compliance as a factor in the Rule 60(b)(5) analysis.

As the district court aptly stated:

Dissolution based on mere compliance with the minimum requirements of federal law is, additionally, inequitable, because it would permit perpetual re-litigation of the merits of Plaintiffs' claims. In choosing to voluntarily enter into the Consent Decree, Defendants waived the opportunity to litigate the merits of the claims in Plaintiffs' Third Amended Complaint in exchange for negotiating the terms of the Consent Decree and avoiding the time, expense, and inevitable risk of litigation. *See Cooper*, 33 F.3d at 545. Through their argument that compliance with federal law necessarily warrants relief under Rule 60(b)(5), however, Defendants are seemingly attempting to re-litigate the claims underlying the Consent Decree. If the basis for a meritorious Rule 60(b) motion is that the claims underlying the consent decree are not meritorious, then parties to consent decrees would be permitted to file periodic Rule 60(b) motions asserting compliance with federal law and, in effect, continually re-litigate the underlying claims until a court determines the defendants are in compliance with federal law and the decree is dissolved. The party filing the Rule 60(b) motion would potentially be able to eliminate consent decree obligations, even if there is no attempted compliance with its legally enforceable terms, no showing that conformity to federal law makes compliance with the consent decree substantially more onerous or unworkable, and no showing that the requested relief is sufficiently tailored to the changed factual circumstances. *See Rufo*, 502 U.S. at 384-91, 112 S. Ct. 748; *Cooper*, 33 F.3d at 545. It follows that the parties opposing dissolution would not enjoy the benefits for which they bargained or the judicially enforceable obligations upon which they relied in entering into the consent decree; and the parties seeking dissolution would paradoxically be entitled to equitable relief despite their inequitable behavior. A Rule 60(b) motion is not a vehicle by which Defendants may disregard the voluntary obligations contained in the Consent Decree, allow time to pass, and then litigate the underlying claims in hopes of

10

never actually complying with [] its terms.[18]

If the Court wished the law to be that consent decrees must be dissolved if defendants comply with federal law, it would have expressly stated so. It did not. A rule of law based on a single factor (compliance with federal law) is the opposite of the Court's requirement of equitable flexibility.[19] We hold that the district court properly determined that the applicable legal standard in this case came from *Rufo* and *Cooper*.

The district court recognized *Frew II*'s admonishment that "when the objects of the decree have been attained, the responsibility for discharging the State's

---

[18] *Frew III*, 401 F. Supp. 2d at 636.

[19] Defendants read *Frew II* as adopting a standard similar to the Prison Litigation Reform Act (PLRA) standard for terminating consent decrees. *See* 18 U.S.C. §§ 3626(a)(1)(A), (b)(3), (c)(1). With the PLRA, Congress sought to curtail federal courts' long-term involvement in prison reform and halt federal courts from providing more than the constitutional minimum necessary to remedy federal rights violations. H.R. REP. NO. 104-21, at 24 n.2 (1995); *see also* H.R. REP. NO. 104-378, at 166 (1995) ("[The PLRA] amends 18 U.S.C. § 3626 to require that prison condition remedies do not go beyond the measures necessary to remedy federal rights violations. . . ."). But no such language can be found in *Frew II*. Further, we note that the House has introduced the Federal Consent Decree Fairness Act. H.R. 1229, 109th Cong. (1st Sess. 2005). This Act would require, among others, that "the burden of proof shall be on the party who originally filed the civil action to demonstrate that the continued enforcement of a consent decree is necessary to uphold a Federal right." *Id.* at § 3. We leave it for Congress or the Supreme Court to change the standard.

11

obligations [must be] returned promptly to the State and its officials."[20] Defendants argued that the only legitimate object of the consent decree was to ensure compliance with federal law regarding the administration of the EPSDT program. The district court rejected this argument and held that the compliance with federal law is not the sole object of the consent decree.[21] The consent decree itself does not reference mere compliance with federal law as its object. Rather, it speaks to the broader goals of enhancing recipients' access to health care and improving the use of health care services by Texas EPSDT recipients.[22] The decree implements the Medicaid statute "in a highly detailed way, requiring the state officials to take some steps that the statute does not specifically require."[23] The district court held that "[t]o interpret the sole object of the Consent Decree to ensure compliance with something less than that which is stated in the Consent Decree itself would be akin to rewriting the Consent Decree to conform to the constitutional floor. Such action is prohibited by the Supreme Court's holding in *Rufo*."[24] To which we add that it is

[20] 540 U.S. at 442, 124 S. Ct. at 90.

[21] *Frew III*, 401 F. Supp. 2d at 634-35.

[22] *Id.*

[23] *Id.* at 634-35 (quoting *Frew II*, 540 U.S. at 439, 124 S. Ct. 899).

[24] *Id.* at 635. In *Rufo*, the Court stated:

12

prohibited by the prior reversal of our holding in this case. Because the object of

the consent decree is not mere compliance with federal law, the objects of the

decree have not been attained.

B.

Defendants contend that if this court concludes that *Frew II* does not provide

the applicable standard for terminating a consent decree, the district court erred by

not applying the termination standard used by the Supreme Court in the school

desegregation cases: *Missouri v. Jenkins*, 515 U.S. 70, 115 S. Ct. 2038, 132

L.Ed.2d 63 (1995); *Freeman v. Pitts*, 503 U.S. 467, 112 S. Ct. 1430, 118 L.Ed.2d

108 (1992); and *Board of Education of Oklahoma City Public Schools v. Dowell*,

---

> A proposed modification should not strive to rewrite a consent decree so that it conforms to the constitutional floor. Once a court has determined that changed circumstances warrant a modification in a consent decree, the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances. A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires. The court should not turn aside to inquire whether some of the provisions of the decree upon separate as distinguished from joint action could have been opposed with success if the defendants had offered opposition.

502 U.S. at 391-92, 112 S. Ct. at 764 (internal quotations, citations and brackets omitted).

13

498 U.S. 237, 111 S. Ct. 630, 112 L.Ed.2d 715 (1991).[25]

In the context of deciding whether to modify or dissolve a desegregation decree, the Court has directed district courts to consider the following factors:

> [1] whether there has been full and satisfactory compliance with the decree in those aspects of the system where supervision is to be withdrawn; [2] whether retention of judicial control is necessary or practicable to achieve compliance with the decree in other facets of the school system; and [3] whether the school district has demonstrated, to the public and to the parents and students of the once disfavored race, its good-faith commitment to the whole of the courts' decree and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance.[26]

The ultimate inquiry is "'whether the [constitutional violator] ha[s] complied in good faith with the desegregation decree since it was entered, and whether the vestiges of past discrimination ha[ve] been eliminated to the extent practicable.'"[27]

The district court rejected the notion that *Freeman* stated the standard for consent decree termination. Instead, the district court held that "[t]he applicable standard in the Fifth Circuit for *both* types of relief [modification and termination] is

---

[25] We note that the defendants did not make this argument in the district court; rather, it was the plaintiffs who urged the district court to apply the termination standard set forth in the school desegregation cases. *Frew III*, 401 F. Supp. 2d at 632-33.

[26] *Freeman*, 503 U.S. at 491, 112 S. Ct. at 1446.

[27] *Id.* at 492, 112 S. Ct. at 1446 (quoting *Dowell*, 498 U.S. at 249-250, 111 S. Ct. at 638).

14

that announced in *Rufo* and applied in *Cooper*."[28] We need not pursue this question because defendants did not attempt to show that they were complying with the decree; rather, they argued that they were in compliance with federal law.[29] But to prevail under *Freeman,* defendants must prove "full and satisfactory compliance with the decree."[30] They did not do so and their argument here is improvident.

## C.

This record and the briefs make no showing that the district court abused its discretion in holding that defendants showed no significant change in factual circumstances to warrant terminating or modifying the consent decree.

Defendants argue that under the *Rufo* standard and this court's interpretation of *Rufo* in *Cooper*, the evidence demonstrates sufficiently changed factual circumstances warranting the decree's dissolution, either in whole or in part. However, defendants fail to articulate how the district court abused its discretion. Instead, defendants only reiterate that they are in compliance with federal law.

The district court went through each of the alleged changed factual

---

[28] *Frew III*, 401 F. Supp. 2d at 632 (emphasis in original).

[29] *Id.* ("Defendants do not argue that they are in substantial compliance with the Consent Decree.").

[30] 503 U.S. at 491, 112 S. Ct. at 1446.

circumstances and held that defendants failed to meet their burden under *Rufo* to prove significant changed factual circumstances with respect to: (1) medical checkups;[31] (2) the provision of dental services;[32] (3) outreach;[33] (4) case management;[34] and (5) all urban areas of Texas.[35] Given that there were no significant changed factual circumstances, the district court held that any remedy that would dissolve the consent decree in its entirety or as to all urban areas of Texas would be "grossly ill-tailored" to the facts as determined by the district court.[36]

Having reviewed the record and the district court's detailed decision, we hold that the district court did not abuse its discretion in holding that defendants failed to show a significant change in factual circumstances to warrant terminating the consent decree in its entirety or for urban areas only.

The order of the district court denying defendants' Rule 60(b)(5) motion is

---

[31] *Frew III*, 401 F.Supp. 2d at 641-54.

[32] *Id.* at 654-57.

[33] *Id.* at 657-66

[34] *Id.* at 666-67.

[35] *Id.* at 667-81.

[36] *Id.* at 683.

16

affirmed.

AFFIRMED.