# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50149

United States Court of Appeals
Fifh Circuit

**FILED**

February 16, 2017

Lyle W. Cayce
Clerk

JORGE CARLOS VERGARA MADRIGAL,

Plaintiff - Appellant Cross-Appellee

v.

ANGELICA FUENTES TELLEZ,

Defendant - Appellee Cross-Appellant

Appeals from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Jorge Carlos Vergara Madrigal (Vergara) and Angelica Fuentes Tellez (Fuentes) are the parents of two young daughters, ages five and three years (the Children). The family resided in Mexico City, Mexico, until April 2015, when Fuentes took the Children on vacation but wrongfully retained them in the United States thereafter. Vergara initiated proceedings in the United States District Court for the Western District of Texas for the Children's return to Mexico under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89. Following a bench trial, the district court ordered that the Children be returned to Mexico. Fuentes ultimately purported to comply with the district

No. 16-50149

court's order by having the Children spend some weeknights in Juarez, Mexico, and the rest of their time in El Paso, Texas.

Both parties filed post-judgment motions. Vergara claimed that Fuentes had not complied with the court's order and asked that the Children and their passports be delivered to him for purposes of return and that their international travel be prohibited. Fuentes sought to vacate the district court's judgment because she claimed that new evidence established that the Children faced a grave risk of harm in Mexico. The district court denied both parties' motions, and both parties appeal. For the reasons discussed below, we affirm the judgment of the district court.

**I**

Vergara and Fuentes are both well-known Mexican businesspersons. Vergara is the founder of Grupo Omnilife, a large Mexican corporation, of which Fuentes was the Chief Executive Officer before the parties' marriage broke down. Vergara and Fuentes married in 2008 and subsequently had two daughters together, V.V.F., born in August 2010, and M.I.V.F, born in January 2013. Before the parties' marriage collapsed, the family resided in Mexico City, Mexico. In April 2015, the parties' marital and business relationship fell apart. At that time, Fuentes took the Children to the United States on a previously planned vacation, but she then decided to remain with the Children in El Paso, Texas. Contested divorce and custody proceedings ensued in Mexico. Mexican courts have issued numerous temporary orders relating to the parties' custody dispute, and the parties disagree on the current state of their custody rights in Mexico.

In June 2015, Vergara filed this action under the Hague Convention in the United States District Court for the Western District of Texas, seeking the return of the Children to Mexico. Following trial, the district court found that Mexico was the state of the Children's habitual residence, within the meaning

of the Convention, and that Fuentes had wrongfully retained the Children in the United States in violation of Vergara's custody rights. The district court also rejected Fuentes's argument that the Children would face a grave risk of harm if returned to Mexico, finding that both parents were well able to provide them with adequate protection. Thus, in September 2015, the district court issued an order granting Vergara's petition and requiring Fuentes to "return the Children to Mexico" (Original Return Order). The district court later granted Fuentes a stay pending appeal, but Fuentes's appeal with this court was ultimately voluntarily dismissed.

In the interim, Fuentes filed with the district court a Rule 60(b) motion to vacate the judgment, arguing that new evidence established that the Children would face a grave risk of harm if returned to Mexico. Vergara, for his part, filed a "motion to enforce the judgment," asking, among other things, that the Children be delivered to him for purposes of return to Mexico. On January 29, 2016, the district court denied Fuentes's motion to vacate and granted in part and denied in part Vergara's motion to enforce, again ordering Fuentes to return the Children to Mexico but declining to impose any additional requirements.

In early February, Fuentes filed a "Notice of Compliance with Court Order," in which she represented to the district court that "the Children were returned to Mexico" and that they are "residing" in Ciudad Juarez, Mexico. However, according to Vergara, he subsequently learned that the Children were only spending some weeknights in their maternal grandfather's house in Juarez, while spending weekdays and weekends in El Paso, Texas. Vergara thus filed a "second supplemental emergency motion for clarification," asking the court to order Fuentes to deliver the Children and their passports to Vergara and to prohibit the Children's international travel out of Mexico. In a February 11, 2016, order, the district court denied this motion. Vergara

No. 16-50149

appeals the district court's January 29 and February 11 orders denying his post-judgment motions.  Fuentes cross-appeals the district court's January 29 order denying her motion to vacate the Original Return Order.

## II

We first discuss Vergara's appeal from the district court's denials of his post-judgment motions, in which he sought orders (1) requiring Fuentes to deliver the Children and their passports to him for their return to Mexico and (2) prohibiting the Children's international travel out of Mexico until the Mexican courts expressly provide otherwise.

## A

Fuentes contends that Vergara has forfeited his challenge to the district court's orders by choosing not to appeal the Original Return Order, which did not include the additional requirements he now seeks.  However, Vergara clarifies that he is not challenging the district court's Original Return Order; instead, he maintains that Fuentes has not returned the Children in accordance with the Hague Convention, as the district court ordered, and that the court therefore abused its discretion in refusing to enforce, or amend, its prior judgment in light of the new evidence of Fuentes's non-compliance. Because Vergara could not have challenged the district court's response to Fuentes's alleged non-compliance through an appeal of the Original Return Order, he may advance his challenge in this appeal from the denial of his post-judgment motions. *Cf. Godwin v. Fed. Sav. & Loan Ins. Corp.*, 806 F.2d 1290, 1294 (5th Cir. 1987) (appeal from denial of Rule 60(b) motion cannot raise issues that could have been raised on direct appeal of the underlying judgment), *implied overruling on other grounds recognized by Lambert v. Fed. Sav. & Loan Ins. Corp.*, 871 F.2d 30, 31 (5th Cir. 1989).

No. 16-50149

**B**

The parties debate the proper characterization of Vergara's post-judgment motions—Fuentes claims that they must be considered motions for relief from a judgment under Federal Rule of Civil Procedure 60(b), while Vergara contends that they may also be viewed as motions to enforce a judgment under Rule 70. Whether characterized as motions under Rule 60(b) or Rule 70, we review the district court's denial of Vergara's post-judgment motions for abuse of discretion. *See Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006) (Rule 60(b)); *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. 1980) (Rule 70). However, we review de novo questions of law underlying the district court's decisions. *See Frazar*, 457 F.3d at 435. As discussed above, Vergara's challenges to the district court's denial of his post-judgment motions depend on his contention that Fuentes did not comply with the district court's Original Return Order because she did not "return" the children to Mexico within the meaning of the Hague Convention.

The Hague Convention, of which both the United States and Mexico are signatories, was adopted to address "the problem of international child abductions during domestic disputes." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). Congress implemented the terms of the Convention through the International Child Abduction Remedies Act (ICARA), 22 U.S.C. §§ 9001-11. The Convention's express objectives are: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and (2) "to ensure that rights of custody and access under the law of one Contracting State are effectively respected." Hague Convention art. I.

The return remedy is the "central operating feature" of the Convention. *Abbott*, 560 U.S. at 9. It requires the return of a wrongfully removed child to his or her state of habitual residence, subject to few exceptions. *Id.* This remedy "is based on the principle that the best interests of the child are well

No. 16-50149

served when decisions regarding custody rights are made in the state of habitual residence." *Id.* at 20. Thus, the Convention works to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (internal quotation marks omitted); *see also* ELISA PÉREZ–VERA, EXPLANATORY REPORT: HAGUE CONVENTION ON PRIVATE INTERNATIONAL LAW 429 (Pérez or Explanatory Report), *available at* https://assets.hcch.net/upload/expl28.pdf (in order to deter international child abduction, the Convention "places at the head of its objectives the restoration of the status quo").[1] "Notably, the return remedy does not address the merits of any underlying custody dispute but instead only determines where any custody decision should be made." *Hernandez v. Garcia Pena*, 820 F.3d 782, 786 (5th Cir. 2016) (citing *Sanchez v. R.G.L.*, 761 F.3d 495, 503 (5th Cir. 2014); 22 U.S.C. § 9001(b)(4)). Neither the Convention nor ICARA define the term "return."

Vergara argues that "return" under the Convention requires a restoration of the pre-abduction status quo, connotes permanence, and precludes delivery of a child to individuals with no custody rights. He therefore maintains that the Children have not been returned to Mexico because they spend the majority of their time in the United States, travel between the two countries on a daily basis, and are in the care of third parties who have no custody rights when they are in Mexico.

We must reject Vergara's expansive reading of the Convention's return remedy as categorically mandating the relief that he seeks. The Hague Convention was intended to address the international aspects of the international child abduction problem. *See* Pérez at 428 ("With regard to the

---

[1] The Pérez–Vera Explanatory Report "is recognized as the official history, commentary, and source of background on the meaning of the provisions of the Convention." *Rodriguez v. Yanez*, 817 F.3d 466, 475 (5th Cir. 2016) (internal quotation marks omitted).

definition of the Convention's subject-matter, . . . the situations envisaged are those which derive from the use of force to establish artificial jurisdictional links on an international level."). The return remedy, in particular, was designed principally to address situations that cannot be resolved unilaterally by the state of habitual residence:

> the one matter which the Convention has tried to regulate in any depth is that of the return of children wrongfully removed or retained. The reason for this seems clear: the most distressing situations arise only after the unlawful retention of a child and they are situations which, while requiring particularly urgent solutions, cannot be resolved unilaterally by any one of the legal systems concerned.

*Id.* at 430. Indeed, the return remedy was designed to ensure that the courts of the state of habitual residence have jurisdiction over the child in order to make custody determinations. *See Hernandez*, 820 F.3d at 786; Pérez at 429. The Explanatory Report explains the Convention's adoption of the return remedy:

> The insurmountable difficulties encountered in establishing, within the framework of the Convention, directly applicable jurisdictional rules indeed resulted in this route being followed which, although an indirect one, will tend in most cases to allow a final decision on custody to be taken by the authorities of the child's habitual residence prior to its removal.

Pérez at 429 (footnote omitted). Thus, the Convention and its return remedy do not control or regulate children whose custody matters are within the exclusive jurisdiction and control of the state of habitual residence.

The parties agree that Mexican courts now have jurisdiction to decide all custody matters in this case—indeed, these custody matters are currently being litigated in Mexico. And the Children's regular and frequent presence in Mexico allows Mexican authorities to enforce any judgment by the Mexican

courts relating to the Children.[2]  The return remedy's goals have thus been achieved in this case.[3]

Vergara cites no authorities that support his various contentions regarding the meaning and content of the return remedy under the Convention.  In his brief on appeal, Vergara contends that "the Children should have been returned to Mexico City, where among other things they can spend time with both parents and resume attendance at their original school."  But while the Convention seeks the "restoration of the status quo" in order to deter child abductions, Pérez at 429, there is no indication that it is meant to restore the factual pre-abduction status quo in every sense, as Vergara suggests.  Indeed, a court's determination of the location of the child's residence within the state of habitual residence, the school he or she must attend, and visitation schedules begins to resemble the judgments to be made in a domestic child

---

[2] Vergara seeks to supplement the record on appeal with evidence that the Children "have not been to Mexico in more than three months."  We decline to exercise our discretion to enlarge the record under the particular circumstances of this case, but we note that Vergara may bring any such relevant evidence before the district court.  Should the district court determine that the Mexican authorities' ability to reach the Children in Mexico may be compromised based on the evidence Vergara seeks to present, we trust that it will act swiftly and decisively to enforce its order and the Convention, including by ordering the delivery of the Children to Vergara, if necessary.  *See* note 3, *infra*.

[3] To be sure, Hague Convention courts are empowered to order the delivery of an abducted child to the petitioning parent for purpose of returning the child to the state of habitual residence.  *See*, *e.g.*, *Charalambous v. Charalambous*, 627 F.3d 462, 470 (1st Cir. 2010) (ordering surrender of children to petitioning parent for purposes of return); *Gallardo v. Orozco*, 954 F. Supp. 2d 555, 580 (W.D. Tex. 2013) (same); *see also* CONFERENCE ON PRIVATE INT'L LAW, GUIDE TO GOOD PRACTICE UNDER THE CONVENTION OF 25 OCTOBER 1980 ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION, PART IV–ENFORCEMENT, § 4, ¶ 76, at 21 (2010) ("In most legal systems, courts can (1) order the abducting parent to return the child to the State of habitual residence, (2) order the child to be handed over to the applicant parent or a person designated by him / her for the purpose of returning the child to that State, or – in some legal systems – (3) order the child to be collected by an enforcement officer.").  In some cases, it may even be necessary in order to effectuate the return remedy, particularly where there is reason to believe that the abducting parent will not cooperate.  But that does not mean that a return within the meaning of the Convention is never effected without this measure.

custody case.  Yet, as noted above, the Convention's return remedy "only determines where any custody decision should be made." *Hernandez*, 820 F.3d at 786.

Similarly, Vergara's complaint that the Children are in the care of third parties when in Mexico is not relevant to the Convention's return remedy because it has no effect on the now-established jurisdiction of the Mexican courts to make custody decisions in this matter. *See id.* Vergara's contention that "return connotes permanence" is likewise without support.  All Vergara offers in this respect are dictionary definitions of the word "return," but these definitions do not support his proposition.  *See* BALLENTINE'S LAW DICTIONARY (defining "return" as a verb meaning: "[t]o come back to a place"); MERRIAM-WEBSTER DICTIONARY ONLINE ("[R]eturn: to come or go to a place again; to come back or go back again; to bring, give, send, or take (something) to the place that it came from or the place where it should go.").

Vergara advances practical considerations that, he claims, counsel against construing the return remedy narrowly.  He asserts that the Children's frequent travel to the United States and the substantial amounts of time they spend there make monitoring their location more difficult and enforcement of Vergara's custody rights more complicated.  He argues that Fuentes "wrongfully removes" the Children, within the meaning of the Convention, every time she causes them to reenter the United States, which raises a difficult question of whether and when Vergara must file another Hague petition.  He further contends that construing the return remedy narrowly will encourage the abduction of children from Mexico to the United States and vice versa.

Although Vergara raises valid concerns, he is mistaken in addressing them to this court.  The courts in Mexico, the state of the Children's habitual residence, are able to grant appropriate relief to address Vergara's concerns.

No. 16-50149

Subject only to the confines of Mexican law, Mexican courts are free to grant Vergara full custody over the Children and to prohibit or restrict their international travel. There is, at this time, no international legal void that requires the Convention's intervention.[4] We therefore affirm the district court's denial of Vergara's post-judgment motions.

## III

We now turn to discuss Fuentes's cross-appeal, in which she challenges the district court's denial of her motion under Rule 60(b)(6) to vacate the Original Return Order. In her motion, Fuentes argued that new evidence of 1) a targeted death threat against her and 2) a Mexican court's issuance of a warrant for her arrest established that the Children would face a grave risk of harm in Mexico.

As previously noted, we review a district court's denial of a Rule 60(b) motion for abuse of discretion, but underlying questions of law are reviewed de novo. *Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006). Rule 60(b)(6) allows courts to provide a party relief from a judgment for any reason not covered by the first five subclauses of Rule 60(b). FED. R. CIV. P. 60(b)(6); *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 n.5 (5th Cir. 2014).

The Hague Convention provides several "narrow exceptions" to the rule requiring the return of wrongfully removed children. *Lozano*, 134 S. Ct. at 1229 (quoting 22 U.S.C. § 9001). One of those exceptions excuses return if

---

[4] Vergara stresses that, if permitted to maintain the status quo, Fuentes may later make "unfair legal arguments," including asserting a "well-settled" defense. Under the well-settled defense, a Hague Convention court is not required to order a child's return to the state of habitual residence if the proceedings have been commenced more than one year after the child's wrongful removal and the child is settled in his or her new environment. Hague Convention, art. 12; *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1229 (2014). We note, however, that even if Fuentes came to assert a well-settled defense, an abducting parent's inequitable conduct that operates to delay the commencement of return proceedings "would weigh heavily in favor of returning a child even if she has become settled." *Lozano*, 134 S. Ct. at 1239 (Alito, J., joined by Breyer and Sotomayor, JJ., concurring).

there is a "grave risk" that return "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b). A party opposing a child's return must prove the existence of such grave risk by clear and convincing evidence. § 9003(e)(2)(A). The alleged harm "must be a great deal more than minimal" and "greater than would normally be expected on taking a child away from one parent and passing him to another." *Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir. 2000) (internal quotation marks omitted).

Fuentes first points to an email sent to the law firm representing her. In November 2015, the partner-in-charge of Jones Day's Mexico City office received an email from a "Julian Cafarelli" warning, in both English and Spanish, that Vergara and one of his attorneys were going to kill Fuentes.[5] Fuentes claims that this email was evidence of a targeted, credible threat against her life that establishes a grave risk of harm to the Children. She further asserts that in denying her motion, the district court "necessarily concluded that threats to Fuentes could not create a grave risk of harm to the Children," and she cites cases to support the proposition that a grave risk of harm may arise by virtue of a child's proximity to actual or threatened violence against his or her parent.

As an initial matter, the denial of Fuentes's motion does not require an assumption that threats against a parent can never create a grave risk of harm to his or her children, and there is no indication that the district court labored under such an assumption. Further, the single, vague email from an unknown source is not clear and convincing evidence of a grave risk of harm to the

---

[5] Specifically, the email's subject line stated: "ATTENTION JONES DAY JORGE VERGARA AND JAVIER COELLO THEY WILL KILL ANGELICA FUENTES JORGE VERGARA Y JAVIER COELLO QUEIREN MATAR A ANGELICA FUENTES." There was no text in the body of the email.

No. 16-50149

Children in Mexico.  As the district court noted in its Original Return Order, Fuentes herself had testified at trial that she was "willing and able to provide the Children with whatever security is necessary if they are ultimately returned to Mexico."  It is not clear how this mysterious email changes that picture.[6]

The cases Fuentes cites are plainly distinguishable, as they involve substantial violence and threats of violence that were far more concrete.  *See Gomez v. Fuenmayor*, 812 F.3d 1005, 1007-10 (11th Cir. 2016) (mother and her boyfriend engaged in a campaign of terror against father, including making threats against him, shooting his girlfriend, and planting drugs in and vandalizing of his mother's car); *Ermini v. Vittori*, 758 F.3d 153, 164 (2d Cir. 2014) (father had history of physical violence toward mother and children); *Van De Sande v. Van De Sande*, 431 F.3d 567, 569-70 (7th Cir. 2005) (father repeatedly physically abused mother in children's presence and threatened to kill children); *Walsh*, 221 F.3d at 219-220 (father was extremely violent toward the mother, his children, and others, even in front of wrongfully removed child); *Sabogal v. Velarde*, 106 F. Supp. 3d 689, 705-06 (D. Md. 2015) (father engaged in massive psychological abuse of mother in front of children, directed children to participate in psychological abuse of mother, and threatened to kill children).

Turning to the arrest warrant, in October 2016, a Mexican court issued a warrant for Fuentes's arrest, charging her with the offense of fraudulent administration.  In her Rule 60(b) motion below, she claimed and continues to maintain on appeal, that no bail is available for this offense, and she will

---

[6] Fuentes points to affidavit testimony by her expert, Lawrence Villalobos, who opined that Fuentes could not provide adequate protection for herself or her Children in Mexico against such a targeted threat.  However, the district court had previously ruled that Villalobos was not qualified to testify about whether Fuentes "can be made safe" in Mexico. Fuentes did not appeal that ruling.

therefore be indefinitely separated from the Children if they are to remain in Mexico.  Fuentes denies any wrongdoing and contends that the arrest warrant is unlawful and that Vergara "engineered" it.  In that respect, she argues:  the Mexican judge who issued the warrant was removed from office four days later; the evidence before that court did not support its territorial jurisdiction; the judge improperly relied on unauthenticated evidence; and the statute of limitations for the alleged offense had likely passed.  In response, Vergara argues that the possible separation of a child from his or her parent is not, by itself, a grave risk of harm within the meaning of the Convention.  Further, he highlights that Fuentes had challenged the legality of the arrest warrant in Mexico on the same bases asserted in her Rule 60(b) motion.

Vergara is correct that the possible separation of a child from a parent is not sufficient to trigger the grave risk of harm exception.  *See England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (separation of child from mother is "inapposite to the 'grave risk' determination") (citing *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 377 (8th Cir. 1995)); *Charalambous v. Charalambous*, 627 F.3d 462 469-70 (1st Cir. 2010) ("The district court correctly concluded that 'the impact of any loss of contact with the Mother is something that must be resolved by the courts of the Children's habitual residence.'").  Moreover, Fuentes does not argue that the Mexican judicial system is corrupt or unfair. For this court to second-guess the decisions of Mexican courts in their domestic criminal cases would be in serious tension with the principle of international comity, which the Convention seeks to further.  *See Blondin v. Dubois*, 189 F.3d 240, 248 (2d Cir. 1999) (international comity is "at the heart of the Convention").  Thus, the arrest warrant, too, does not establish clear and convincing evidence of a grave risk of harm to the Children.  Accordingly, we affirm the district court's denial of Fuentes's motion to vacate the Original Return Order.

13

No. 16-50149

**IV**

For the forgoing reasons, we AFFIRM the district court's denial of Vergara's and Fuentes's post-judgment motions.  All pending motions are DENIED.