# United States Court of Appeals

## For the First Circuit

No. 07-1523

DOMINIK KUFNER,

Petitioner, Appellee,

v.

TINA KUFNER,

Respondent, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

---

Before

Lipez, Circuit Judge,

Selya, Senior Circuit Judge,

and Siler,* Senior Circuit Judge.

---

Thomas M. Dickinson for appellant.

Bradford N. Martin, with whom Gerald Nissenbaum was on brief, for appellee.

---

March 7, 2008

---

*Of the Sixth Circuit, sitting by designation.

**SILER**, <u>Senior Circuit Judge</u>. In 2007, Dominik Kufner filed a petition in the United States District Court for the District of Rhode Island alleging that his wife, Tina Kufner, wrongfully removed the couple's two minor sons, J.K. and M.K., from Germany to Rhode Island. He sought an order returning them to Germany in his custody, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 [hereinafter Hague Convention], as implemented by the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. Tina argued that returning their sons to Germany would create a "grave risk of harm," a defense to a petition under Article 13(b) of the Hague Convention. The district court granted Dominik's petition and ordered that the sons be returned to Germany.

Tina Kufner appeals, arguing, inter alia, that the district court erred by concluding that she had "wrongfully removed" the sons and that the Hague Convention violates the equal protection component of the Due Process Clause of the Fifth Amendment. Because none of her arguments has any merit, we AFFIRM.

                                I.

Tina is a United States citizen and native of Rhode Island. Dominik is a German citizen who owns a business in Munich, Germany. They married in 1996 and settled in Munich. In 1998, they had their first son, J.K., and in 1999 they had a second son, M.K. Tina and Dominik began having marital problems and they separated

in 2005. During the separation period, they informally agreed to share time with their sons. At first, this arrangement worked well because Dominik traveled often, but in early 2006 their relationship began to deteriorate after Tina discovered graphic photographs of the sons taken by Dominik.

Dominik took 49 photographs of the sons at his house in 2005. Tina submitted 43 of them to the court in support of her Article 13(b) defense that her sons would face a grave risk of harm if returned to Germany. The district court described 39 of the photographs as relatively innocuous pictures of the children playing and laughing, naked, in the living room of Dominik's house. The other four photographs were more graphic in nature. Dominik stored the photographs on his computer.

Tina learned of the photographs in January 2006. In early February 2006, Dominik spent ten days alone with the sons during ski week, a German school holiday. After returning from the ski week holiday, the sons began to display disturbing physical symptoms, including bed-wetting, nervous eye twitching, sleeplessness, and nighttime crying and screaming. The parents blamed each other for the problems.

Tina's German lawyer sent a letter to Dominik demanding an explanation for the photographs. When she did not receive an adequate response, she petitioned for sole custody in the German court. Dominik feared that she would leave the country with the

sons, so he obtained an order requiring her to deposit their passports with the court. The German court ordered a home study for both parents' homes and talked with the sons in camera. It then issued a written opinion, holding that the parents must exercise joint parental custody, specifying the dates on which the parents can have access to the sons and where they can travel with them, and ordering that their passports be returned to Tina.

The next few months were comparatively peaceful, but in summer 2006, Dominik petitioned the German court for sole custody. The court requested a social worker with the Department of Youth and Families to conduct an evaluation of the parents and the sons. The social worker recommended that the court deny his petition for sole custody and expressed concern about the acrimony between the parents. Also in summer 2006, the parents feuded over M.K.'s medical care. M.K. had developed problems with his ear, nose, and throat. Tina believed that he needed an operation on his adenoids, but Dominik asserted that an operation was not medically necessary. This dispute further increased the tension between the parents.

Tina petitioned the German court to suspend Dominik's visitation rights or, in the alternative, to permit only supervised visitation. Four days later, she petitioned for permission to relocate the sons to the United States. Without ruling on either petition, the German court ordered an investigation of the photographs. A "court-appointed company" was supposed to conduct

this investigation, but, because of a file mixup, it never received the photographs and it never conducted the investigation. Instead, the GWG[1] performed a custody evaluation, including an evaluation of the photographs.

The GWG appointed a certified psychologist to interview each member of the family. After conducting the interviews, she advised the court by letter that both parents should retain contact with the sons. The GWG later produced a "Psychological Expert Opinion" that concluded that Dominik's personality was within "the normal range," that the interactions between him and the sons were positive and loving, and that they were happy, healthy, and displayed age-appropriate development. The report concluded that the photographs had not negatively affected the sons. It further warned that the continuing deterioration of the parents' relationship was harming them, and it noted that Tina was unable to appreciate his role in raising them.

On October 18, 2006, without a prior hearing, the German court issued a temporary "Ruling on Access and Contact," which was to be followed until the court determined the final merits of the custody case. In this ruling, the court ordered that Dominik be given rights of access to the sons and that the parents must refrain from

---

[1]The GWG is the German Society for Scientifically-Based Forensic and Legal Psychology-Work Group Law of Domestic Relations. It is the psychological wing of the German Department of Youth and Families.

having disputes in their presence. The court concluded that the photographs did not indicate that he was a pedophile and that he did not inappropriately encourage sexualized behavior of the sons.

On November 12, 2006, the German court issued an injunction structuring Dominik's visitation rights over the Christmas holidays. The injunction forbade Tina from traveling to the United States with the sons. The court ordered her to deposit their American passports with the Department of Youth and Families. On December 20, 2006, the court conducted a hearing and met with the sons in the absence of their parents. Later, at the same hearing, the parents agreed to a settlement on visitation rights during the holidays that conformed with the November 12 injunction. The agreement required Tina to deposit the sons' American passports with the United States consulate and to refrain from traveling to the United States over the Christmas holidays.

In January 2007, in direct violation of the German court orders, Tina obtained the sons' American passports from the consulate and fled to the United States without notifying Dominik or the German court. On January 31, 2007, Dominik filed a petition in the district court seeking return of the sons to Germany in his custody. While this case was pending, on February 16, 2007, he obtained a temporary order from a German court awarding him full custody.

Pursuant to Federal Rule of Civil Procedure 17(c) and with the consent of the parties, the district court appointed Sharon O'Keefe as guardian ad litem and attorney for the sons. O'Keefe recommended that the district court (1) view all of the photographs, (2) appoint an independent expert with clinical training and expertise to determine whether the photographs were pornographic, (3) consider the German child welfare agency's view on the photographs and its evaluation of the parents, and (4) analyze the effectiveness of the German investigations. After interviewing the sons, O'Keefe determined that they "had taken an unhealthy view of their power and responsibility in the custody determination, and that any more involvement of the children in the proceeding would be significantly harmful." O'Keefe reported that the sons stated they were attached to their mother and, if asked, they would want to live with her.

Upon O'Keefe's recommendation, the district court ordered the parents to take M.K. to a physician to address his medical issues. After a sleep test, the physician diagnosed M.K. with mild to moderate sleep apnea and recommended surgery to remove his tonsils and adenoids, but he stated that this surgery was not urgently needed.

The district court heard evidence from the parties. The heart of Tina's argument was the Article 13(b) grave risk of harm defense based on the photographs of the sons and the alleged failure of

German officials to take the photographs seriously. The district court relied heavily on its court-appointed independent expert in pediatrics, child abuse, child sexual abuse, and child pornography, Dr. Carole Jenny. Specifically, the district court asked Dr. Jenny whether (1) the photographs of the sons constituted child pornography and (2) whether the behavior problems suffered by the children were indications of sexual abuse.

Dr. Jenny reported that there was no evidence to suggest that Dominik was a pedophile, that he was sexually aroused by children, or that the pictures were pornographic. She approved of the German investigations and stated that they were accurate assessments and that their conclusions were consistent with their reported observations. She determined that the symptoms that the sons displayed were consistent with the stress in their lives caused by the acrimonious custody dispute. She recommended that the sons not undergo further sexual abuse evaluation because it would increase their already-dangerous stress levels. Finally, she noted that they may have been psychologically abused by both parents because the parents' acrimonious relationship played out in front of them. O'Keefe agreed with Dr. Jenny's report.

The district court granted Dominik's petition for return of the sons to Germany. Kufner v. Kufner, 480 F. Supp. 2d 491 (D.R.I. 2007). It held that the sons were wrongfully removed from Germany in violation of the Hague Convention. It concluded that Tina

failed to prove her Article 13(b) defense because she could not show by clear and convincing evidence that the sons would face a grave risk of harm if returned to Germany with their father. She does not challenge this finding on appeal. The district court conditioned the order of return on certain undertakings.

## II.

Children who are wrongfully removed or retained within the meaning of the Hague Convention are to be returned promptly unless one of the narrow exceptions applies. 42 U.S.C. § 11601(a)(4). The Hague Convention promotes two important principles. First, a district court deciding a petition for return of a child has jurisdiction to decide the merits of the wrongful removal claim, but it may not decide the merits of the underlying custody dispute. Whallon v. Lynn, 230 F.3d 450, 455 (1st Cir. 2000). Second, the Hague Convention is generally intended to restore the pre-removal status quo and to discourage a parent from engaging in international forum shopping. Id. The vast majority of Hague Convention petitions brought in the United States result in the return of the children to their country of habitual residence. Walsh v. Walsh, 221 F.3d 204, 222 (1st Cir. 2000).

## Mootness

Dominik moved to dismiss Tina's appeal as moot. He contends that resolving this appeal on the merits could result in conflicting custody orders and that the "ongoing exercise of

-9-

continuing jurisdiction" over the custody dispute by the German court renders this appeal moot. We deny this motion and resolve the appeal on the merits because the appeal presents a live controversy. Dominik's argument confuses the dispute over the petition to return under the Hague Convention with the underlying custody dispute. We may decide the former but not the latter. See Whallon, 230 F.3d at 455(holding that a court in the United States faced with a petition for return of a child has jurisdiction to decide the merits of the wrongful removal claim under the Hague Convention, but it may not decide the merits of the underlying custody dispute). We are not confronted with dueling custody orders issued by courts in different countries because the district court ruled on the merits of the petition for return only, not the underlying custody dispute.

**Wrongful Removal**

Tina argues that the district court erred by concluding that she had wrongfully removed her sons from Germany. In support of this argument, she asserts that the removal of the sons was not "wrongful" because she brought M.K. to Rhode Island for medical treatment. However, she confuses "wrongful" removal under the Hague Convention with her own legally-unsupported notion of "justified" removal. Therefore, her argument fails.

To petition for the return of a child under the Hague Convention, the petitioner must establish by a preponderance of the

-10-

evidence that the child was "wrongfully removed or retained" within the meaning of the convention.  42 U.S.C. § 11603(e)(1).  A removal or retention is wrongful when

> (a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b) at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, art. III.  Tina concedes that the sons' regular place of residence was Germany.  Therefore, the only issues are (1) whether Dominik had "rights of custody" over the sons under German law and (2) whether he was exercising or would have exercised those rights but for the removal.  The district court correctly decided both issues in favor of Dominik.

First, under the Hague Convention, rights of custody include rights relating to the care of the child and the right to determine the child's place of residence.  Hague Convention, art. V.  Rights of custody are distinguished from "rights of access," with the Hague Convention defining the latter as "the right to take a child for a limited period of time to a place other than the child's habitual residence."  Id.  Having rights of custody is necessary to petition for return of a child, while having only rights of access does not entitle a party to petition for the return of a child to the place of habitual residence. Hague Convention arts. VIII &

-11-

XXVI; <u>Whallon</u>, 230 F.3d at 454-55 (discussing remedies for violation of custody rights and access rights).

Here, Dominik had rights of custody over the sons at the time Tina removed them from Germany.  He had rights relating to their care and he had at least a shared right to determine their place of residence.  Under German law, where parents are married at the birth of the child, they have joint custody over the child until the operation of law (e.g., death of a parent) or a court order terminates joint custody.  At the time she removed the sons, she and Dominik were undergoing divorce proceedings, but the proceedings were not final and joint custody remained in effect. The German court stated in its written opinion that it awarded the parents joint custody pending the investigation and final determination of the merits.  This order was not suspended or superseded before she removed the sons to Rhode Island.  The German court modified and updated its order to provide specific directions to the parents for the custody of the sons over the holidays, but it never awarded Tina full custody or eliminated Dominik's joint custody rights.  These facts show that Dominik had rights of custody within the meaning of the Hague Convention.

Second, Dominik would have exercised his rights of custody but for Tina's removal of their sons from Germany.  He persistently sought custody of the sons and visited them often.  After this

proceeding began, Dominik successfully petitioned the German court for full custody of his sons on a temporary basis.

Whether M.K. needed medical care was irrelevant for purposes of the wrongful removal determination because the analysis turns on whether the removal was consistent with the rights of custody established in the country of habitual residence. "Wrongful removal" is a legal term strictly defined by the Hague Convention and it does not require a balancing of the equities. <u>Friedrich</u> v. <u>Friedrich</u>, 983 F.2d 1396, 1400 (6th Cir. 1993). Tina should have litigated any issues relating to M.K's medical care in Germany, the country of his habitual residence. Moreover, regardless of the applicable legal framework, the facts undermine Tina's claim that she brought M.K. to Rhode Island for emergency medical treatment.[2] Therefore, the district court correctly concluded that the sons were wrongfully removed from Germany.

**Equal Protection**

Tina argues that the Hague Convention violates the equal protection component of the Due Process Clause of the Fifth Amendment. In support of her argument, she claims that the Hague Convention's grave risk of harm standard is unconstitutional because she is entitled to the less-demanding best interests of the

---

[2]If treatment for M.K. truly motivated the removal, then there would have been no reason to bring J.K., who did not need medical attention. However, she brought both sons and she admitted that she wanted to relocate to the United States with them. She investigated schools in Rhode Island.

child standard. She did not raise this argument before the district court. We decline to address this argument because arguments not advanced in the district court cannot be raised for the first time on appeal. <u>Teamsters, Chauffeurs, Warehousemen & Helper's Union, Local No. 59</u> v. <u>Superline Transp. Inc.</u>, 953 F.2d 17, 21 (1st Cir. 1992). In all events, the argument is patently without merit; the best interests of the child standard applies in custody matters and, as we previously noted, custody is not the issue in a Hague Convention case.

**J.K.'s Right to Be Heard**

Under Article 13 of the Hague Convention, the court may "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views." Hague Convention art. XIII. No part of the Hague Convention requires a court to allow the child to testify or to credit the child's views, so the decision rests within the sound discretion of the trial court. The district court did not abuse its discretion by refusing to allow J.K. to testify.

Dr. Weintrob, a child psychiatrist, testified that further questioning of J.K. could be harmful because repeatedly confronting him about the pictures could make him anxious and distort his ability to distinguish reality from fantasy. Additionally, the sons had been questioned enough and further questioning would not

-14-

be informative.  The district court assumed that the sons, if asked, would express a desire to remain in the United States with their mother.  It also noted that they expressed a desire to remain in Germany when asked by the GWG in Germany.  The district court properly gave little weight to their wishes because of their young ages, lack of maturity, and susceptibility to parental influence. The district court did not abuse its discretion when it concluded that it would be harmful and pointless to allow J.K. to testify.

**Undertakings**

The district court conditioned the order of return on certain undertakings.  Tina claims that the undertakings are insufficient to protect her and the sons upon their return to Germany.  However, her argument fails because we have reversed a district court's imposition of undertakings as insufficient to protect only when there was a grave risk of harm and we concluded that the district court's undertakings were insufficient to mitigate that grave risk of harm.  Danaipour v. McLarey, 286 F.3d 1, 25-26 (1st Cir. 2002) (holding that undertakings protecting a child from grave risk for only a very limited time are insufficient to defeat the grave risk defense); Walsh, 221 F.3d at 220-21 (holding that while undertakings may sometimes mitigate a grave risk, undertakings were insufficient where a parent had repeatedly violated court orders in both countries and there was every reason to believe he would violate the undertakings).  Here, the district court rejected

-15-

Tina's Article 13(b) defense and found that there was no grave risk of harm.

While there may be other considerations, such as international comity, that justify reversing or modifying a district court's imposition of undertakings even in the absence of a grave risk of harm, such circumstances are not present here. See Danaipour, 286 F.3d at 22 (discussing the importance of international comity when considering undertakings). The district court ordered Dominik to secure dismissal of German criminal charges against Tina that arose out of this dispute after he represented that he could do so. It also ordered Dominik to act quickly to obtain medical care for M.K. and to allow Tina reasonable access and visitation until a German court orders otherwise. These undertakings do not prejudice Tina and they do not offend notions of international comity. The district court did not err by imposing the undertakings.

AFFIRMED.