# United States Court of Appeals
## For the First Circuit

No. 12-1939

CLAUDIA FELDER,

Petitioner, Appellant,

v.

PATRICK WETZEL; CHILDREN'S HOSPITAL
INTEGRATED CARE ORGANIZATION, LLC,
d/b/a CHILDREN'S HOSPITAL BOSTON;
ALEXANDRA PONDER, a/k/a DEBBIE PONDER,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Thompson, Circuit Judges.

Barry S. Pollack, with whom Phillip Rakhunov and Sullivan &
Worcester, LLP were on brief, for appellant.
Edward F. Dombroski, Jr., with whom Travers Dombroski PC was
on brief, for appellee Patrick Wetzel.
Mary Beth L. Sweeney, with whom Rachael E. MacKenzie, David E.
Cherny, and Atwood & Cherny P.C. were on brief, for appellee
Alexandra Ponder.

September 28, 2012

**LYNCH**, **Chief Judge**.   In this Hague Convention case concerning claims by the mother of wrongful retention in this country of her fourteen-year-old daughter who was in need of emergency psychiatric care, the district court both denied relief and dismissed the Swiss mother's case.   Felder v. Ponder, Civ. Action No. 12-11192-DJC, 2012 WL 3128570 (D. Mass. July 30, 2012). The district court interpreted orders of the relevant Swiss Guardianship Authority and a Swiss court as having stripped the mother of all custody rights so as to deprive the federal court of jurisdiction.   While the language of those orders was imprecise, we believe the orders had a far more limited scope and the federal court is required under the Convention to hear the case.   We vacate its dismissal of this case and remand with instructions.

## I.

The chronology and basic facts are not in dispute.   On May 19, 2012, K.W., a fourteen-year-old Swiss citizen, attempted to harm herself by ingesting pills while living in the United States with her godmother, Alexandra Ponder.   K.W. was then hospitalized at Children's Hospital Boston ("the Hospital").   On June 7, 2012, the Hospital declined to release K.W. to her mother, petitioner Claudia Felder, a Swiss resident, absent evidence such a release would comply with the child's treatment plan.   On June 25, 2012, a

U.S. family court, on an ex parte motion by the godmother Ponder,[1] gave Ponder temporary guardianship over K.W. extending until October 26, 2012.  By July 11, 2012, K.W. had been released from the Hospital into Ponder's care.  In the meantime, on June 21, June 25, and July 11, 2012, the Swiss Guardianship Authority issued orders and communications pertaining to K.W. which are key to this case, and which we describe later.

On July 10, 2012, K.W.'s mother, Claudia Felder, filed a petition in federal district court for the return of K.W. to Switzerland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670.  The Convention is implemented by the International Child Abduction Remedies Act (ICARA), 42 U.S.C. § 11601 et seq.

As relief, Felder sought, inter alia, "an Order directing the prompt return of KW to her habitual residence of Switzerland, subject to undertakings by Mother and a qualified physician to provide a treatment plan for KW consistent with advice and involvement of medical professionals."  Respondents Ponder and Wetzel opposed this relief, with Wetzel filing a motion to dismiss the petition, which Ponder joined.  Respondents also asserted two defenses to K.W.'s return to Switzerland under Article 13 of the Convention.

---

[1] Ponder's motion was made with the consent of K.W.'s non-custodial biological father, Patrick Wetzel.

-3-

Without reaching the merits of the petition or the Article 13 defenses, on July 30, 2012, the district court dismissed Felder's petition. Felder appeals, arguing that the district court erred in dismissing the case primarily because it failed to distinguish between permanent legal custody rights and emergency physical custody issues, and because it incorrectly interpreted certain Swiss child guardian agency and court rulings. Felder also argues that the district court erroneously failed to make a request under Article 15 of the Convention to the central authority of Switzerland for its opinion on Felder's custody rights.

For the reasons described below, we reverse the district court's dismissal of Felder's petition and remand for further proceedings consistent with this opinion.

## II.

We focus on the facts most relevant to the Hague Convention issues: those regarding custody and habitual residence, the medical and psychological emergency involving K.W., and the nature of the orders from the Swiss authorities and court.

It is undisputed that before issuance of the orders we describe later the mother had full custody of her daughter K.W. and it is undisputed that Switzerland was throughout and is the country of habitual residence. It is undisputed that before these medical events, on an unspecified date, Felder had signed an "Authorization for Medical Treatment of [K.W.]" giving "my authorization and

-4-

consent for Alexandra Ponder to authorize necessary medical or dental care for this child." The form stated that Felder was the parent and legal guardian, and the authorization was limited. This was done because K.W. was attending school in Massachusetts in the Fall of 2011. Felder bought K.W. a July 12, 2012 return ticket to Switzerland at the end of the school year. K.W. flew back to Switzerland for the holiday break and then returned to Massachusetts on January 3, 2012.

Felder's Hague Convention petition states that "on or about May 19, 2012 . . . KW stated that she tried to hurt herself by ingesting certain medications belonging to Ponder."[2] K.W. was initially taken to the emergency room at Holy Family Hospital in Methuen, Massachusetts, but was then transferred to the inpatient psychiatric unit of Boston Children's Hospital on May 23, 2012.

Ponder informed Felder of K.W.'s hospitalization and Felder agreed that K.W. should receive immediate medical care; during the next three weeks, Felder monitored K.W.'s progress via Ponder and the staff at the Hospital while consulting with Swiss medical professionals. After K.W. had been hospitalized for three weeks, Felder and Dr. Andreas Schmidt, K.W.'s Swiss physician, proposed to the staff of the Hospital that K.W. be transferred to

---

[2] Ponder alleges that "after [K.W.'s] mother threatened to return her to Switzerland, the minor child attempted suicide," and that "[w]hen KW finally woke up, she told Godmother that if she had to return to Switzerland and to her Mother, then she did not want to be on the earth."

Zurich for further treatment. Felder's petition states that she and Schmidt advised the staff at the Hospital that "they would take responsibility for KW's health and safety and would both personally accompany KW back to Switzerland."

On June 7, 2012, a social worker at the Hospital contacted Felder and advised her that the Hospital would not permit K.W.'s immediate return to Switzerland. The Hospital's counsel represented that "[t]he hospital has never taken a specific opinion as to which custodian, be it mother or godmother or father, is the appropriate person for custodial purposes or medical decision-making," rather, "[t]he issue has been . . . safety planning." On June 11, 2012, Hospital staff sent an email to Dr. Daniel Marti of the Kinderspital Zürich outlining the conditions under which K.W. could be safely returned to Switzerland.[3] The Hospital staff explained that "[g]iven the patient's current condition, the clinical team here strongly feels that the following must be in place for a safe discharge home to Switzerland": (1) "[t]ransfer plan for patient from our locked inpatient psychiatric facility to a secure psychiatric setting in Switzerland," and (2)

---

[3] In this email, the Hospital staff noted that

[o]ur 6/7/12 discharge plan for the patient was for discharge from our locked inpatient psychiatric facility to an acute residential treatment program at McLean . . . . It was our understanding that all were in agreement with this plan so we went forward with the arrangements. Then we learned patient's mother stated she was no longer was [sic] in support of this plan.

"[c]onfirmation of the accepting secure psychiatric facility in Switzerland with the current clinical team."

Felder contends that, at about this time, "Ponder stopped providing Mother with information about her daughter and, in conjunction with the staff at the Hospital, prevented Mother and KW's sisters from having contact with KW." On June 17, 2012, Ponder asked Felder if she would agree to Ponder's guardianship over K.W. and to an order that would prevent K.W. from leaving the United States. Felder refused and told Ponder that she was terminating the medical authorization for K.W. she had signed.

On June 20, 2012, Felder traveled to Boston and again told Ponder that she was revoking Ponder's authorization for medical care. Felder alleges that she did not know that K.W.'s father, Wetzel, had by this time filed an ex parte petition as to K.W. in the Guardianship Authority of the City of Lucerne.[4]

We discuss in the merits of our legal analysis the three communications issued by the Swiss Guardianship Authority, respectively on June 21, 2012 (ex parte); June 25, 2012 (ex parte); and July 11, 2012 (after hearing from Felder), and a Swiss court

_____

[4] Swiss law establishes two guardianship authorities, the Guardianship Authority and the Guardianship Supervisory Authority. Code Civil [CC] Dec. 10, 1907, SR 210, art. 361 (Switz.). These authorities have power to transfer custody over a child, modify awards of parental custody, or withdraw custody under certain conditions. See id. arts. 298-298a, 311-12, 315b. The Guardianship Authority may also take appropriate measures to protect a child's welfare. See id. arts. 307, 315a.

-7-

order of July 12, 2012.  For now, it is sufficient to say that on June 21, 2012, the Swiss Authority ex parte issued a precautionary order to Felder saying that "[a]t present, the existing endangerment of your daughter can only be avoided by withdrawing your right to determine the place of residence of [K.W.] or concretely the parental custody right."  The order prohibited Felder from removing K.W. from the Hospital clinic and said she would be given a full hearing later.  The order was served on the Hospital, making clear the medical team had authority to treat K.W.

On June 25, 2012, Ponder filed a motion to be appointed as K.W.'s temporary guardian with the Essex Division of the Probate and Family Court of the Commonwealth of Massachusetts ("the Family Court").  Felder says this was done without her knowledge; in any event, she did not appear.

The state Family Court acted based on Ponder's representations.[5]  The accuracy of these representations has not

---

[5] The key representations in Ponder's petition were that:

"The minor child has been in the care and custody of the moving party for a year.  On May __, 2012, after her mother told her that she was going to force her to return to Switzerland, the child attempted suicide.  The child has been in a psychiatric facility with Children's Hospital since that time. . . . The mother has arrived with the intention of removing the child from the psychiatric facility and returning to Switzerland.  The moving party and the Father are concerned that the minor child will attempt suicide again if she is removed from the facility and with her mother"; and that

"Mother's rights to the child have been terminated by the

-8-

been tested in federal court.  On June 25, 2012, the state Family Court appointed Ponder as K.W.'s guardian until September 24, 2012 -- a date that has since been extended to October 26, 2012.[6]

On July 10, 2012, Felder filed her petition under the Hague Convention in federal district court.  Respondents Ponder and Wetzel, in addition to seeking the dismissal of Felder's petition, raised two Article 13 defenses under the Convention: that K.W.'s return to Switzerland would present a grave risk of harm to her, and that K.W. was of sufficient age and maturity that her objections to being returned to Switzerland should be heeded.

Felder had by this time also sought recourse from the Swiss Guardianship Authority.  On July 11, 2012, the Swiss Authority issued a "Decree" subtitled "Repeal of precautionary order of June 21, 2012," in which it observed that by "letter dated June 27, 2012, the biological mother . . . requested reconsideration of the precautionary decision of June 21, 2012 and its complete repeal."  The decree did in fact repeal the

_____

Swiss government, City of Lucerne, Office of the Guardianship Authority, for endangerment of the child as a cause of her volatile relationship with the child and intention to return the child to Switzerland against her wishes and against the advice of clinicians."

[6] The Family Court order authorized Ponder "to perform any and all acts necessary for the day-to-day care, custody, education, recreation and property of the minor" and "to authorize any and all medical and dental care for the health and well-being of the minor, except the Guardian may not consent to extraordinary medical treatment pursuant to G.L. c. 190B, § 5-306A."

precautionary order, with an explanation.  We later describe the decree further.

On July 11, 2012, Felder filed an "Emergency Motion by Mother Claudia Felder to Vacate Temporary Guardianship" in the Massachusetts Family Court.  Apparently, K.W. had been discharged from the Hospital and was staying with Ponder.  At the close of the hearing, the Family Court "enter[ed] a finding, that the most recent order from the Swiss courts [i.e., the June 21, 2012 precautionary injunction], quote, withdraws mother's custody rights" and stated that "it is not clear to me . . . that it is -- it had been reinstated."[7]  Explaining that "I have to do what's in [K.W.'s] best interest and right now, I need to preserve the status quo," the court, in a handwritten order, denied Felder's emergency petition "pending the hearing in Federal Court."

On July 2, 2012, Felder had also filed a court complaint in Switzerland seeking to reverse the Guardianship Authority's June 21, 2012 precautionary order.  The July 11, 2012 decree was issued in the interim.  On July 12, 2012 the District Court of Lucerne ruled on Felder's petition, concluding that "[w]ith the [Authority's] repeal of the precautionary ruling handed down June 21, 2012, the revocation of the complainant's parental custody

[7] The Family Court did not appear to have before it the Authority's July 11, 2012 decree repealing its June 21, 2012 precautionary order, which was issued on the same day as the Family Court hearing.

-10-

ordered by the custodianship authorities of Lucerne becomes obsolete. The complainant no longer has any legally protected interests in continuing the proceedings before the Lucerne District Court." The Lucerne District Court also determined that "[t]he court of lower instance cannot be accused of either gross procedural error or violation of rights."

On July 20, 2012, the federal court conducted oral argument on Wetzel's motion to dismiss Felder's petition under the Convention but did not take evidence.

Ten days later, on July 30, 2012, the federal district court dismissed Felder's petition. Felder, 2012 WL 3128570, at *1. The district court concluded that K.W.'s state of habitual residence was Switzerland, id. at *4-*5, a conclusion not disputed on appeal. It then looked to Swiss law and the orders of the Swiss authorities to determine that "as of June 21st, the Guardianship Authority took the action that it was empowered to take and revoked Felder's parental custody," id. at *6, and that "the Guardianship Authority's subsequent rulings did not unequivocally reinstate her custody rights," id. at *7. The district court reasoned that "the one authority, the Guardianship Authority, that has the power to determine custody rights, did not decline to take further action, but instead deferred to the actions of the Probate and Family Court in the United States." Id. The court concluded that "Felder has failed to show, by a preponderance of the evidence, the wrongful

-11-

retention of K.W. in the United States." Id. at *8. The court also declined Felder's request to make an inquiry of the Swiss central authority under Article 15[8] of the Hague Convention for "a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention." Id. at *8 n.2. The court did not reach the question of whether any defenses under Article 13 of the Convention applied to the case.

## III.

In an appeal under the Hague Convention, we review both the district court's interpretation and its application of the Convention to the facts de novo. Charalambous v. Charalambous, 627 F.3d 462, 466 (1st Cir. 2010) (per curiam) (citing Danaipour v. McLarey, 286 F.3d 1, 13 (1st Cir. 2002)). Our review of the meaning of the orders from the Swiss Guardianship Authority and the Swiss court is also de novo. Whallon v. Lynn, 230 F.3d 450, 454, 456 (1st Cir. 2000).

As the Supreme Court explained in Abbott v. Abbott, 130 S. Ct. 1983, 1995-96 (2010),

> The Convention is based on the principle that the best interests of the child are well served when decisions

---

[8] Article 15 of the Hague Convention provides in relevant part that "[t]he judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State."

regarding custody rights are made in the country of habitual residence. See Convention Preamble, Treaty Doc., at 7. Ordering a return remedy does not alter the existing allocation of custody rights, Art. 19, id., at 11, but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner.

The Convention applies to children habitually resident in contracting states who are under the age of sixteen. Art. 4. One of its objects is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State." Id. art. 1.

Abbott requires adherence to the text of the Convention, which may vary from dictionary or common law definitions of the terms used. 130 S. Ct. at 1991. The Convention defines "rights of custody" to "include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence," as opposed to "rights of access," which "include the right to take a child for a limited period of time to a place other than the child's habitual residence." Art. 5.

Ponder and Wetzel have raised two of the "exceptions to th[e] [Convention's] general rule" of return. Walsh v. Walsh, 221 F.3d 204, 216 (1st Cir. 2000). A child wrongfully retained or removed need not be returned under the grave risk exception if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation," Hague Convention, art. 13(b).

-13-

In addition, "[t]he judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Id. art. 13.

The district court's reasoning in dismissing Felder's petition was based on its reading of the various orders of the Swiss authorities and court.[9] While the district court quite correctly examined these orders, we think that these orders in sum were not designed to nor did they terminate the mother's rights. Rather there was an attempt to do no more than cope with an emergency situation as to K.W., which the Guardianship Authority concluded required prompt action and which was better not taken from abroad, but immediately addressed by courts, doctors, and others concerned on the scene. We reach our conclusion by looking at the sequence of events leading to the district court's actions, the text of the Swiss orders, and the purposes of the Convention.

The first Swiss Authority order, the June 21, 2012 order, was, as it stated, only a "precautionary injunction"; it was ex parte and in the nature of a temporary emergency order. It plainly restricted Felder from removing K.W. from Children's Hospital under the circumstances. It stated that the proceedings would be

---

[9] There is, as a result, no need to address in this opinion the separate issue of wrongful retention.

continued and that Felder would be given a fair hearing in proper child protection proceedings. The Authority stressed that it had the power to "take precautionary measures to protect threatened interests <u>for the time being</u>" (emphasis added), that Felder's "parental custody right regarding [K.W.] is withdrawn <u>as a precaution</u>" (emphasis added) during the period of the hospitalization, and that K.W. was "to remain <u>temporarily</u> hospitalized for further precautionary treatment" (emphasis added). The Authority also stated that "[t]he child protection proceedings will be continued, and at the appropriate time, you [Felder] will be granted a fair hearing in the proper child protection proceedings." The Swiss Authority order on its face does not say that a temporary guardianship meant to secure a child from immediate harm was meant to permanently prevent the exercise of the mother's custodial rights. The order was a temporary and emergency response.

The June 25, 2012 Guardianship Authority letter to the Hospital explained its June 21, 2012 order as being based on "the [present] urgent need for action" and a fear the American authorities would otherwise not act as needed in the best interests of the child. In light of the emergency nature of the measures taken, it would be incorrect to conclude that these decisions decisively and permanently altered Felder's custody rights over K.W. under Swiss law. They did not strip Felder of her right under

the Convention to seek K.W.'s return and to have custody over her child decided by K.W.'s state of habitual residence. Such a result would frustrate the purposes of the Convention. The text of the Swiss decisions do not demonstrate that the Swiss authorities either stripped Felder of all custody rights over K.W. or ceded all jurisdiction to the Massachusetts Family Court. They certainly did not remotely state any intent to defeat a petition by Felder under the Convention.

It is clear from the Swiss Guardianship Authority's July 11, 2012 decree that the prior order -- the Authority's June 21, 2012 temporary revocation of some of Felder's custody rights -- has itself been revoked. The decree expressly states that:

- Felder is "entitled to custody" of K.W.; both Felder and K.W. reside in Switzerland.

- the June 21, 2012 precautionary decision of withdrawing parental custody was made under an exception to normal custody rules known as forum necessitatis.

- the Authority had invoked forum necessitatis in order to address "the existing endangerment of the child's well-being" and approval of the placement at Boston Children's Hospital and in that context, the precautionary withdrawal of the mother's right to remove K.W. from the Hospital.

- the precautionary decision was made in a summary proceeding and at the time the Authority had been led to believe the American courts would otherwise not act to protect the child.

- in light of the action of the American courts, the basis for invoking child protection matters and the forum necessitatis provisions before the Authority no longer existed.

-16-

- "Correspondingly, the precautionary decision is to be repealed."

Nowhere in the Swiss Authority's July 11, 2012 decree does the Authority "defer" all matters pertaining to K.W. to American family court. Instead, the Swiss Authority recognized that the taking of emergency measures by the Massachusetts Family Court obviated the need for the Authority's prior precautionary measures. The decree certainly does not state that the Swiss Authority recognized the competence of the Massachusetts Family Court to do anything more than order measures immediately necessary to protect K.W.'s well-being. As in <u>Nicolson</u> v. <u>Pappalardo</u>, 605 F.3d 100, 108 (1st Cir. 2010), "it is impossible to read [the language of the decree] as [an order] that permanent custody be determined in [the state] court and nowhere else."

Our reading is strongly buttressed by the authoritative Swiss District Court's July 12, 2012 order dismissing Felder's complaint that the June 21, 2012 precautionary order should be reversed. The Lucerne District Court's July 12, 2012 order stated that "the revocation of the complainant's parental custody ordered by the custodianship authorities of Lucerne [has] become[] obsolete. The complainant no longer has any legally protected interests in continuing the proceedings before the Lucerne District Court."

These later orders establish that as of July 12, 2012, any temporary revocation by the Swiss authorities of some of Felder's custody rights over K.W. had itself been revoked. Felder has custody rights under the Convention. The issue is not open on remand.

The Massachusetts Family Court has itself recognized that its continuing authority is subject to the resolution of Felder's Hague Convention petition. The temporary guardianship order to Ponder expires on October 26, 2012, unless extended, and the Family Court has stated that its actions respecting K.W. will "depend[] on what the federal court does." For the reasons stated earlier, we vacate the dismissal and remand for hearing on the merits. This means Felder's petition for return with appropriate undertakings must be heard on the merits, as must the defenses.

As we explained in Kufner v. Kufner, 519 F.3d 33, 39 (1st Cir. 2008) (ellipsis in original),

> To petition for the return of a child under the Hague Convention, the petitioner must establish by a preponderance of the evidence that the child was "wrongfully removed or retained" within the meaning of the convention. 42 U.S.C. § 11603(e)(1). A removal or retention is wrongful when "(a) it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Hague Convention, art. III.

We have stressed that "under the Constitution, parents have a fundamental interest in their relationships with their children," Walsh, 221 F.3d at 216, and the Supreme Court has emphasized that "[t]he liberty interest . . . of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000).

The two defenses under Article 13 of the Convention are: that K.W.'s return to Switzerland would present a grave risk of harm to her, and that K.W. is of sufficient age and maturity (as she is almost fifteen) that her objections to being returned to Switzerland must be heeded. "[A] respondent who opposes the return of the child by asserting the article 13(b) exception has the burden of proving this by clear and convincing evidence." Walsh, 221 F.3d at 217 (citing 42 U.S.C. § 11603(e)(2)(A)). This "narrow" exception to return, id., must be heard on remand.

The record will need development as to whether the emergency circumstances giving rise to K.W.'s hospitalization and care have now passed. Even if so, we note that Article 13(b) "does not require that the risk be 'immediate'; only that it be grave." Id. at 218. On remand the district court must explore whether respondents can carry their burden of demonstrating that K.W.'s return presents a grave risk of harm to her under Article 13(b). This inquiry must include consideration of whether any risk could

-19-

"be mitigated sufficiently by the acceptance of undertakings and sufficient guarantees of performance of those undertakings," id. at 219, with such consideration subject to the concerns set forth in Danaipour, 386 F.3d at 303.

As for the second defense -- the age and maturity exception set forth in the unnumbered provision of Article 13 -- we note that K.W. will turn fifteen in December, 2012. The explanatory report[10] on the Convention states that "it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will." Elisa Pérez-Vera, Explanatory Report: Hague Conference on Private International Law ¶ 30, in 3 Acts and Documents of the Fourteenth Session 426, 433 (1980). However, "[n]o part of the Hague Convention requires a court to allow the child to testify or to credit the child's views, so the decision rests within the sound discretion of the trial court." Kufner, 519 F.3d at 40.

In carrying out these proceedings, the district court should bear in mind that Article 11 of the Hague Convention requires that "[t]he judicial or administrative authorities of

---

[10] As we have noted, "Perez-Vera served as 'the official Hague Conference reporter for the Convention,' and her explanatory report 'is recognized by the Conference as the official history of and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention.'" Whallon, 230 F.3d at 455 n.5 (quoting Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10503 (Mar. 26, 1986)).

-20-

Contracting States shall act expeditiously in proceedings for the return of children."  At the same time, protection of the child's safety and, where appropriate, autonomy is of paramount concern, and such delay as is necessary to explore fully the ramifications of the sought return of K.W. is entirely justified under the circumstances.

We reverse the dismissal of Felder's petition under the Convention, reinstate the case, and remand for further proceedings consistent with this opinion.[11]  In doing so, we stress we have made no determination as to whether K.W. should be returned.  No costs are awarded.  So ordered.

---

[11] We deny Felder's September 5, 2012 emergency motion for relief from Essex County Probate Court's orders concerning medical records.  In light of our disposition of this case, we see no need to act on Felder's August 14, 2012 motion to supplement the record on appeal, Ponder's August 27, 2012 motion to supplement the record on appeal, or Felder's August 30, 2012 conditional assent and cross-motion to supplement the record on appeal.