# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 11, 2023

Lyle W. Cayce
Clerk

No. 22-50203

Abigail Gramillo Galaviz,

*Plaintiff—Appellant*,

*versus*

Luis Enrique Reyes,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:21-CV-286

Before Richman, *Chief Judge*, and Ho and Engelhardt, *Circuit Judges*.

Priscilla Richman, *Chief Judge*:

Galaviz and Reyes had two children in Mexico together, Andrew and Grace. After Galaviz and Reyes separated, the children remained in Mexico with Galaviz. In July 2021, Reyes took the children to El Paso and refused to return them. Galaviz filed an action in the district court requesting the return of the children to Mexico under the Hague Convention. Reyes raised two affirmative defenses claiming that returning the children would violate their fundamental right to an education and would expose them to a grave risk of harm or an intolerable situation. The district court concluded that Reyes had

No. 22-50203

satisfied his burden and denied Galaviz's request for return of the children. Galaviz appealed. We reverse and remand.

**I**

Andrew and Grace were four and five years old respectively at the time of the district court proceedings. After Galaviz and Reyes separated, the children remained in Juarez, Mexico under Galaviz's care. Reyes moved out of the home and relocated to El Paso, Texas. Galaviz and Reyes have no formal custody or possession court orders in place governing each parent's custodial rights.

In July 2021, Reyes took the children to El Paso for an appointment with a physician and declined to return them. In August, Galaviz filed a petition for custody of the children with the Seventh Family Court for Hearings in the Judicial District of Bravos, Chihuahua, Mexico. Galaviz has yet to obtain service on Reyes. In October, Galaviz submitted an Application for Return of her Children to the United States Department of State, the Central Authority of the United States under the Hague Convention. The United States Department of State sent a letter via email to Reyes requesting that he voluntarily return the children. In November, Galaviz filed a Verified Petition for the Return of the Children under the Hague Convention and the International Child Abduction Remedies Act (ICARA) in the Western District of Texas, El Paso Division.

The district court held a trial and heard two days of testimony. Reyes conceded that Galaviz met her burden of establishing a prima facie case of wrongful removal by a preponderance of the evidence. The burden then

No. 22-50203

shifted to Reyes, who opposed the return, to establish an exception.[1] Reyes raised the exceptions set forth in Articles 20 and 13(b) of the Convention.

As to Reyes's Article 20 defense, the district court concluded that "[Galaviz's] inability to be present with the children, as required so that they can attend school, effectively denies the children the fundamental right to an education," and "[t]he denial of an education to two special needs children in their most formative years utterly shocks the conscience of the court." As to Reyes's Article 13(b) defense, the court concluded that "[t]he incidents of abuse and neglect collectively and the strong suggestion of sexual abuse constitute a grave risk of physical and psychological harm and an intolerable situation should the children return to Juarez." The court concluded that Reyes had established these exceptions by clear and convincing evidence[2] and denied Galaviz's request for the return of the children to Mexico. This appeal followed.

## II

The Hague Convention "requires that a child wrongfully removed from her country of habitual residence be returned there upon petition" unless the removing parent can establish an affirmative defense to removal.[3] "The Convention's primary aims are to 'restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court.'"[4] "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody

---

[1] 22 U.S.C. § 9003(e)(2).

[2] *See id.* § 9003(e)(2)(A) (detailing that the exceptions set forth in Articles 13b and 20 of the Convention must be established by clear and convincing evidence).

[3] *England v. England*, 234 F.3d 268, 270 (5th Cir. 2000).

[4] *Id.* at 271 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)).

No. 22-50203

rights are made in the country of habitual residence."[5] ICARA is the United States' implementing legislation of the Hague Convention.[6] Under ICARA, once a petitioner has established by a preponderance of the evidence that the child was wrongfully removed or retained, the burden shifts to the respondent to establish an affirmative defense.[7]

The affirmative defenses at issue here are set forth in Articles 20 and 13(b) of the Convention. Article 20 requires a respondent to show that "the return of the child 'would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.'"[8] "Article 13(b) of the Hague Convention requires a respondent to show that 'there is a grave risk that his or her return would expose the child to physical or psychological harm.'"[9] These exceptions must be established by clear and convincing evidence.[10] Clear and convincing evidence is "weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'"[11] It is "evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy,

---

[5] *Abbott v. Abbott*, 560 U.S. 1, 20 (2010).

[6] 22 U.S.C. § 9001(b)(1).

[7] *Id.* § 9003(e).

[8] *Friedrich*, 78 F.3d at 1067 (quoting Hague Convention on the Civil Aspects of International Child Abduction (Convention) art. 20, Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11).

[9] *Sanchez v. R.G.L.*, 761 F.3d 495, 510 (5th Cir. 2014) (quoting Convention, art. 13(b)).

[10] 22 U.S.C. § 9003(e)(2)(A).

[11] *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (quoting *Cruzan by Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 285 n.11 (1990)).

of the truth of the precise facts."[12]  We have concluded that mere speculation does not meet the clear and convincing burden.[13]

The district court determined that Reyes established each exception by clear and convincing evidence.  This court reviews a district court's "findings of fact for clear error and its conclusions of law *de novo.*"[14]  Cases arising under the Hague Convention involve very fact-specific inquiries and our caselaw on these exceptions in particular is relatively sparse; therefore, we look to our sister circuits for guidance.

## A

"The Article 20 defense allows repatriation to be denied when it 'would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.'"[15] Article 20 is to be "restrictively interpreted and applied."[16]  It "is not to be used . . . as a vehicle for litigating custody on the merits or for passing judgment on the political system of the country from which the child was removed."[17]  This exception should only be "invoked on the rare occasion

---

[12] *Id.* (quoting *Cruzan*, 497 U.S. at 285 n.11) (internal quotation marks omitted).

[13] *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 636 (5th Cir. 1971).

[14] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006) (per curiam).

[15] *Souratgar v. Lee*, 720 F.3d 96, 108 (2d Cir. 2013) (quoting Hague International Child Abduction Convention: Text and Legal Analysis (Convention Text and Legal Analysis), 51 Fed. Reg. 10494, 10510 (Mar. 26, 1986)).

[16] Convention Text and Legal Analysis, 51 Fed. Reg. at 10510.

[17] *Id.*

No. 22-50203

that return of a child would utterly shock the conscience of the court or offend all notions of due process."[18]

The district court found that while in Galaviz's care, the children did not attend preschool or kindergarten due to the school's requirement that Galaviz attend school with them to help with their special needs. Because Galaviz was unable to comply with this requirement, the children did not attend school.

These findings do not establish an Article 20 defense. The district court focused on Galaviz's actions or inactions regarding the children's education, not on Mexican laws or policies that would prohibit return.[19] The court even acknowledged that "the law in Mexico may provide for special education." By focusing on Galaviz's actions or inactions, the court essentially made an impermissible *custody* determination. Reyes did not present clear and convincing evidence demonstrating that the return of the children would utterly shock the conscience of the court or offend all notions of due process.

**B**

"Under Article 13(b), a court in its discretion need not order a child returned if there is a grave risk that return would expose the child to physical harm or otherwise place the child in an intolerable situation."[20] "This

---

[18] *Id.*

[19] *See Gallegos v. Garcia Soto*, 2020 WL 2086554, at *8 (W.D. Tex. April 30, 2020) (stating that the respondent argued that returning the child to Mexico would not be permitted by the fundamental principles of the requested State, but that "[s]he did not present any evidence of Mexican law or official policy to this effect"); *Aldinger v. Segler*, 263 F. Supp. 2d 284, 290 (D.P.R. 2003) ("[Article 20] is directed to concerns about harms arising from the child's return to a particular country.").

[20] Convention Text and Legal Analysis, 51 Fed. Reg. at 10510.

provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests."[21] "The person opposing the child's return must show that the risk to the child is grave, not merely serious."[22] "The grave risk involves not only the magnitude of the potential harm but also the probability that the harm will materialize."[23] "An example of an 'intolerable situation' is one in which a custodial parent sexually abuses the child."[24]

The district court concluded that Reyes presented evidence demonstrating a history of neglect and abuse by Galaviz for ten reasons: While in Galaviz's care: "(1) the children's physical and cognitive abilities declined;" "(2) the children did not attend school although they suffered severe special needs;" "(3) [Grace] received no treatment for her special needs;" "(4) the children remained completely non-verbal;" "(5) the children's healthcare needs were being neglected as the children were missing vaccines, and had unaddressed auditory, visual, and dental issues;" "(6) the children's hygiene was being neglected;" (7) "the children's ability to use the toilet had regressed and the children reverted to using diapers;" (8) "the children had been physically abused;" (9) "there was a strong suggestion the children experienced sexual abuse;" and (10) "Petitioner presented no evidence of a suitable means of childcare while she is at work."

---

[21] Convention Text and Legal Analysis, 51 Fed. Reg. 10494, 10510 (Mar. 26, 1986).

[22] *Id.*

[23] *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013) (citing *Van De Sande v. Van De Sande*, 431 F.3d 567, 570 (7th Cir. 2005)).

[24] Convention Text and Legal Analysis, 51 Fed. Reg. at 10510.

No. 22-50203

**1**

The findings pertaining to neglect (findings (1), (2), (3), (4), (5), (6), (7), and (10)) do not satisfy the clear and convincing evidence burden.

If there are "equally plausible explanations" for the outcome, a party did not sustain its burden of proving clear and convincing evidence.[25] In *Gil-Leyva v. Leslie*,[26] the respondent-mother raised an Article 13(b) defense because of the father's "negligence in caring for the children and allowing unsafe living conditions in the home."[27]   The Tenth Circuit, in an unpublished decision, stated that "[i]f the children suffered no harm from [the father's] alleged negligence when they were younger and more vulnerable, we struggle to see how they face a grave risk of harm now."[28] "And while past harm is not required to establish a grave risk of future harm, it is probative of whether the children will suffer upon returning to the same circumstances."[29]   In other words, the mother was unable to rely on speculation that unsafe living conditions necessarily meant the children would face a grave risk of harm.

---

[25]*N.L.R.B. v. Koenig Iron Works, Inc.*, 681 F.2d 130, 143 n.20 (2d Cir. 1982) (concluding that a party did not sustain its burden of showing clear and convincing evidence because of "the existence of equally plausible explanations" for the outcome); *see also Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 636 (5th Cir. 1971); *Cuellar v. Joyce*, 596 F.3d 505, 509 (9th Cir. 2010) (concluding that testimony stating that the child was "kind of small and thin" and that "perhaps" the child was malnourished "plainly does not amount to clear and convincing evidence of a grave risk of harm").

[26] 780 F. App'x 580 (10th Cir. 2019) (unpublished).

[27] *Id*. at 591.

[28] *Id*. at 592.

[29] *Id*. (citing *Baran v. Beaty*, 526 F.3d 1340, 1346 (11th Cir. 2008)).

No. 22-50203

In *Charalambous v. Charalambous*,[30] the court concluded that "[t]o the extent that [the child] has exhibited some behaviors and reactions . . . that may be consistent with sexual abuse, those behaviors may also be explained by some other event, such as the stress of being brought to the United States and being separated from his Father with whom he has an undeniably close relationship."[31]

In *Cuellar v. Joyce*,[32] the district court relied on the respondent-father's testimony that the child "was sometimes cared for by a sick relative, had frequent ear infections and had unexplained burns behind her earlobes."[33] Based on this evidence, the court concluded that the mother was so neglectful that returning the child to her care would be "unsafe."[34] The Ninth Circuit disagreed, stating, "[b]y drawing this conclusion about [the mother's] fitness as a parent, the district court overstepped its mandate and impermissibly addressed the ultimate question of custody."[35] Even if the district court believed the respondent-father's testimony "verbatim," the Ninth Circuit concluded the showing fell "far short of clear and convincing evidence."[36] In the present case, the district court's findings regarding the children's healthcare, including the children's cognitive decline, the fact that they remained non-verbal, or their regression to using diapers may be

---

[30] 2010 WL 4115495 (D. Me. 2010), *aff'd*, 627 F.3d 462 (1st Cir. 2010).

[31] *Id*. at *10.

[32] 596 F.3d 505 (9th Cir. 2010).

[33] *Id*. at 510.

[34] *Id*.

[35] *Id*.

[36] *Id*.

supported by evidence that would be sufficient in a custody dispute. [37] However, this evidence falls short of meeting Reyes's clear and convincing burden.

Finally, Reyes presented no evidence that unsuitable childcare would expose the children to a grave risk of harm. He merely expressed concern that Galaviz often left the children with her older daughters and they did not take care of the children. This is not clear and convincing evidence of a grave risk of harm.

**2**

Next, the evidence related to physical abuse does not establish a grave risk of harm under a clear and convincing burden.

The Second Circuit has stated that "[s]poradic or isolated incidents of physical discipline directed at the child, or some limited incidents aimed at persons other than the child, even if witnessed by the child, have not been found to constitute a grave risk" under a clear and convincing burden.[38] Cases concluding that the grave risk exception has been met often involve physical abuse that is repetitive and severe.[39] In *Simcox v. Simcox*,[40] the Sixth Circuit concluded that the grave risk exception was met because "[t]he

---

[37] *See Guerrero v. Oliveros*, 119 F. Supp. 3d 894, 913-14 (N.D. Ill. 2015) (concluding that evidence that the child "was frequently left unsupervised in the street, had lice, and was often dirty" fell "short of proving that the Children will face a serious, let alone grave, risk of harm if returned," rather, this evidence went to the issue of custody).

[38] *Souratgar v. Lee*, 720 F.3d 96, 104 (2d Cir. 2013).

[39] *See, e.g.*, *Simcox v. Simcox*, 511 F.3d 594, 608 (6th Cir. 2007); *Blondin v. Dubois*, 189 F.3d 240, 243 (2d Cir. 1999) (concluding that the grave risk exception had been met because there was evidence that, among other things, the father had beaten the children, including twisting a piece of electrical cord around one of their necks).

[40] 511 F.3d 594 (6th Cir. 2007).

nature of abuse . . . was both physical (repeated beatings, hair pulling, ear pulling, and belt-whipping) and psychological . . . ."[41]  The court stated that "[i]mportantly, these were not isolated or sporadic incidents."[42]  The court concluded that based on "the serious nature of the abuse, the extreme frequency with which it occurred, and the reasonable likelihood that it will occur again absent sufficient protection . . . [petitioner] has met her burden of establishing, by clear and convincing evidence, a grave risk of harm in this case."[43]

Contrast cases in which the exception has not been met.  In *Altamiranda Vale v. Avila*,[44] the Seventh Circuit concluded  that the "contested assertion that [the father] once struck his son with a video-game cord, fell short of meeting th[e] demanding burden."[45]  Similarly, in *Saldivar v. Rodela*,[46] the mother testified that she struck the child with a stick on three occasions and on one other occasion struck him with a belt.[47]  The father also testified that the child "freezes" presumably because of the psychological harm done to him by his mother.[48]  The court concluded that evidence failed to meeting the "demanding burden" for establishing the grave risk exception.[49]

---

[41] *Id*. at 608.

[42] *Id*.

[43] *Id*. at 609.

[44] 538 F.3d 581 (7th Cir. 2008).

[45] *Id*. at 587.

[46] 879 F. Supp. 2d 610 (W.D. Tex. 2012).

[47] *Id*. at 630.

[48] *Id*.

[49] *Id*.

No. 22-50203

The district court found that the children had been physically abused based on the children's behavior and on the testimony of Galaviz's former friend. The court found that the children cowered and protected their heads when bathing, that Andrew reacted to protect Grace when she spilled her beverage, and that he covered her mouth to quiet her when she cried. Reyes testified that he never saw Galaviz hit the children, but that he observed her yell at them. Reyes stated that he would attempt to conduct video conferences between Galaviz and the children, but that they would become very upset and cry and throw the phone at him.

There are other plausible explanations for the children's behavior.[50] Reyes's sister acknowledged that it was possible the children did not want to be bathed by someone they didn't know. The children could have behaved fearfully because of prior actions by Reyes—Galaviz testified that Reyes had punched her, tried to strangle her, caused swelling, bruises, black eyes, a busted lip, and a broken nose.

Galaviz's former friend testified that she witnessed Galaviz physically abuse the children. She stated that Galaviz hit Andrew with a foam slipper to reprimand him for climbing a kitchenette. She saw Galaviz slap her adult daughter when she confronted her about spanking Andrew. She also testified that Galaviz would hit the children because they would cry. This is not the kind of repetitive and severe abuse seen in cases like *Simcox*. This case is more similar to *Altamiranda Vale*.

---

[50] *See Charalambous v. Charalambous*, 2010 WL 4115495, at *10 (D. Me. 2010), *aff'd*, 627 F.3d 462 (1st Cir. 2010) ("To the extent that [the child] has exhibited some behaviors and reactions . . . that may be consistent with sexual abuse, those behaviors may also be explained by some other event, such as the stress of being brought to the United States and being separated from his Father with whom he has an undeniably close relationship.").

12

The evidence, therefore, does not satisfy an Article 13(b) defense. Neither the evidence of the children's behavior nor the former friend's testimony about the alleged abuse meet the clear and convincing burden.

**3**

Lastly, there is no clear and convincing evidence establishing sexual abuse. The district court determined that there was a "strong suggestion of sexual abuse" which constituted a grave risk of harm or an intolerable situation. This "strong suggestion" was based on the findings that Reyes received anonymous text messages stating that Grace and Andrew had been sexually abused with Galaviz's knowledge, a police report filed by Reyes, a physical examination in which a physician expressed his or her belief that Andrew "could have been sexually abused," and a police report filed by the physician.

This evidence does not meet the clear and convincing evidence burden. In *Danaipour v. McLarey*,[51] the First Circuit determined that there was a clear and substantial claim of abuse because of evidence including, vaginal redness on one child after her return from visits with her father, the child's statements to a psychologist that her father had caused the redness, statements by the child that her father had hurt her "pee pee," and that she had exhibited symptoms of abuse.[52] Similarly, in *Ortiz v. Martinez*,[53] the mother had described how she had seen the father molesting the child in the shower, how she had overheard the child tell her father not to touch her anymore, and that the child had exhibited behavior consistent with having

---

[51] 286 F.3d 1 (1st Cir. 2002).

[52] *Id.* at 5-7.

[53] 789 F.3d 722 (7th Cir. 2015).

suffered sexual abuse.[54]  This evidence was sufficient to establish the grave risk exception.[55]

By contrast, in *Kufner v. Kufner*,[56] the First Circuit concluded that the respondent did not establish the grave risk exception despite evidence that the father took four graphic photographs of his children and the children began exhibiting physical symptoms such as bed-wetting, nervous eye twitching, sleeplessness, and nighttime crying and screaming after a vacation with the father.[57]

In the present case, the physician stated that the Andrew *could* have been sexually abused.  The Texas Department of Family and Protection Services initiated an investigation but closed it with no findings.  The El Paso Police Department also closed its investigation.  The district court acknowledged that the text messages could "be from just about anyone with bad intentions."  This court has previously concluded that information from an unknown source is not sufficient to establish a grave risk of harm.[58]  The district court erred in concluding that Reyes established an Article 13(b) defense.

While we are sympathetic to the sensitive issues presented, "[a] court that receives a petition under the Hague Convention may not resolve the

---

[54] *Id*. 724-25.

[55] *Id*. at 730.

[56] 519 F.3d 33 (1st Cir. 2008).

[57] *Id*. at 36, 41.

[58] *See Madrigal v. Teller*, 848 F.3d 669, 676 (5th Cir. 2017) ("[A] single, vague email from an unknown source is not clear and convincing evidence of a grave risk of harm to the Children in Mexico.").

No. 22-50203

question of who, as between the parents, is best suited to have custody of the child."[59]  We leave the question of custody to the Mexican courts.[60]

\*     \*     \*

The district court erred in concluding that Reyes established Article 20 and 13(b) defenses by clear and convincing evidence.  The judgment of the district court is REVERSED, and the case is REMANDED with instructions that the court enter an order that the children be returned to Mexico.

---

[59] *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010).

[60] *Id*. ("[T]he court must return the abducted child to its country of habitual residence so that the courts of *that* country can determine custody.") (emphasis original).

No. 22-50203

JAMES C. HO, *Circuit Judge*, concurring in the judgment:

I understand and respect how the district court approached these difficult and troubling issues. I nevertheless agree that the governing precedents require that these issues be resolved in a custody hearing. Accordingly, I concur in the judgment.